LAMAR   TOWNSHIP   v.   CITY   OF   LAMAR,
Appellant.

**Division Two, July 14, 1914.**

1. **TAXATION: Void Levy: Raised by Recipient.** In a suit by a township to recover the amount of road and bridge taxes collected by the township collector and county treasurer as *ex officio* county collector and paid to the city situate within the township, in the honest belief that such taxes belonged to the city, a defense set up by the city that the levies under which the taxes were collected were void, should be stricken out, on motion. The city cannot justify its right to hold money collected as taxes, on the theory that the levy under which they were collected was void.

2. ———: **To Whom Taxes Belong: Depends on Law.** To whom public taxes belong and the disposition that can lawfully be made of them, depends on the law, and not upon any idea of fairness.

3. ———: **Road and Bridge Taxes: Collected by Township: Division with City.** The amendment of 1908 to section 22 of article 10 of the Constitution gave to township boards in counties having township organization the right to levy a tax of twenty-five cents on the hundred dollars' valuation for road and bridge purposes, to be used for no other purpose; and the Legislature has no authority to enact a statute taking from the township any part of the tax so collected, and any statute that authorizes a division of said taxes with a city situate within the township would be unconstitutional; and Sec. 11767, R. S. 1909, authorizing such division, is unconstitutional.

4. ———: **Paid to City by Mistake of Law.** A payment of road and bridge taxes belonging to a township, collected by a township collector and the county treasurer as *ex officio* county collector, made to the treasurer of the city situated in said township, under the mistaken view that under the law said taxes belonged to the city, is no bar to a recovery by the township of the money so paid. The rule that a payment made in mistake of law cannot be recovered, does not apply to a municipality. [Distinguishing Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264, and State ex rel. v. Hawkins, 169 Mo. 1. c. 618.]

5. **PAYMENT: Mistake of Law: Public Officer.** A public officer, charged with the collection of public taxes, is not a general agent of the municipality, but only an agent for the purposes defined by law, and of the limitations of his agency the public is bound to take notice. He cannot give away county funds, or disburse them contrary to law, and any payment of them made by him, unless authorized by valid law, even if made under the mistaken and honest belief that the law authorizes it, is not binding upon the municipality, unless the element of estoppel or some other inexorable principle of law intervenes to bar the muncipality's right to recover back the money so paid.

Appeal    from    Barton    Circuit    Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*J. B. McGilvray* and *Edwin L. Moore* for appellant.

(1)  The petition does not state facts sufficient to constitute a cause of action.  It may state a case

against the collector, but not against the city which innocently received the money. 27 Cyc. 865; Case v. Packing Co., 105 Mo. App. 172. (2) It is against equity and the natural justice of the thing for the plaintiff to recover in this case. Hethcock v. Crawford Co., 200 Mo. 177. (3) These moneys were not sought to be levied, if at all, under the "special road and bridge tax" of section 11769 which follows the constitutional amendment of 1908, but under section 11767. Green City v. Martin, 237 Mo. 483. (4) There was really no levy for any of the years involved, and Lamar had just as much right to apply the money on the public highways as the township had. Secs. 11705, 11709, 11420, 11582 and 11772, R. S. 1909. (5) "Township charges" of 11705 are broad enough to include road and bridge taxes. State ex rel. v. Piper, 214 Mo. 446. (6) The mutilated and spoliated records of the township board were not admissible; such records should only be written up "from memoranda or minutes made by the secretary." Some of these important entries were made by the clerk years afterward and rested upon nothing more substantial than his memory. "An omission in a record cannot be supplied from conjecture, but only where the context shows clearly what words are to be added." Lincoln v. Chapin, 132 Mass. 472; 34 Cyc. 590; State ex rel. v. Wray, 55 Mo. App. 655; 37 Cyc. 976; State v. Railroad, 135 Mo. 77. (7) Counsel will say a levy was unnecessary: He seemed to think it was necessary in drawing his petition, and why cannot we attack plaintiff's title? Defendant may do so in replevin, conversion, ejectment, etc. Young v. Glasscock, 79 Mo. 574; Eidson v. Hedger, 38 Mo. App. 55; Kirk v. Kane, 87 Mo. App. 281. (8) It was not necessary that defendant show a better title than plaintiff; if as good, it will be sufficient. 27 Cyc. 875; 4 Wait's Actions & Defenses, 511; Bank v. Inv. Co., 160 Mo. App. 380. (9) Money paid under a mistake

of law cannot be recovered back. Schell City v. Mfg. Co., 39 Mo. App. 264; Sparks v. Jasper Co., 213 Mo. 237; State ex rel. v. Ewing, 116 Mo. 137; State ex rel. v. Shipman, 125 Mo. 486; Scott Co. v. Leftwich, 145 Mo. 34; State ex rel. v. Hawkins, 169 Mo. 618; Williams v. Carroll Co., 167 Mo. 15; Morgan Park v. Knopf, 199 Ill. 444; Badeau v. U. S., 130 U. S. 439; 30 Cyc. 1315. (10)  Under section 2778 a suit on an implied contract, as that alleged here, cannot be maintained against a city.  Perkins v. School District, 99 Mo. App. 483; Savage v. City, 83 Mo. App. 323; Schell City v. Mfg. Co., 39 Mo. App. 264; Crutchfield v. Warrensburg, 30 Mo. App. 456; Anderson v. Ripley Co., 181 Mo. 58; Hook v. City, 144 Mo. App. 144.

*H. W. Timmonds* for respondent.

(1)  All moneys arising from the special road and bridge tax shall be appropriated by the township board of directors and there can be no division of it between the city and the township.  Green City v. Martin, 237 Mo. 474; State ex rel. v. Everett, 245 Mo. 714; Sec. 22, art. 10, Constitution.  Sec. 11767, R. S. 1909, is the only authority for a division of taxes between the city and the township and the Supreme Court has held in Green City v. Martin and State ex rel. v. Everett, supra, that this section does not apply to the taxes involved in the case at bar.  Cities of the fourth class ''have and exercise exclusive control over all streets, alleys, avenues and public highways within the limits of such city.''  Sec. 9400, R. S. 1909.  And are empowered to levy and collect taxes on all property within the city limits.  Sec. 9400, R. S. 1909. A township is a political subdivision of a county for local governmental purposes and is in a sense a *quasi* corporation.  County roads and bridges are matters of general or public concern, while city streets, sidewalks and alleys have a local and peculiar or cor-

porate character. 1 Dillon on Mun. Corp. (3 Ed.),
secs 66 and 74; Jefferson Co. v. St. Louis Co., 113
Mo. 625. The funds in question can only be applied
to the roads and bridges in th township outside of the
incorporated city of Lamar because the city is re-
quired by law to maintain their streets and the town-
ship has no control over them; the city has power to
levy and collect taxes and to appropriate money for
maintaining their streets; they act independently of the
township; an appropriation of any part of these road
and bridge taxes to be used upon the streets of the
city of Lamar is a gift or grant within the meaning
of the Constitution and any act of the Legislature au-
thorizing any such .gift or grant is unconstitutional
and void. Sec. 46, art. 4, Constitution; State ex rel.
v. County Court, 142 Mo. 575. (2) Where money
has been received by a collector for taxes, the money
after its reception by the collector, is public money
and belongs to the State, county or township for whose
use it was collected. Davis v. Bader, 54 Mo. 168;
State ex rel. v. County Court, 142 Mo. 584. And pub-
lic moneys can only be paid out for the purposes and
in the manner prescribed by law. (3) The general
rule of the common law is that a mistake of law is
no ground for relief because "ignorance of the law
excuses no one;" as a general proposition, this rule
exists in equity, but like many other general rules, it
exists with qualifications. Bispham's Equity, sec. 187;
Story's Equity (12 Ed.), sec. 111; Nelson v. Betts,
21 Mo. App. 229. Where a party acts upon the mis-
apprehension that he has no title at all in the prop-
erty, it seems to involve in some measure a mistake
of fact; that is, of the fact of ownership, arising from
a mistake of law, and courts will grant relief. Story's
Equity (12 Ed.), secs. 120, 122, 123, 129, 130, 137, 138c,
138f. Relief is sometimes given also in cases of sur-
prise; that is, where parties have entered into arrange-
ments unadvisedly and improvidently, and without

due deliberation; so, also in some cases where the law is confessedly doubtful, and the question is one about which ignorance may well be supposed to exist. Bispham's Equity, sec. 188; Story's Equity (12 Ed.), sec. 134. Where a mistake of law is attended by circumstances that render it inequitable for the other party to take advantage of it, equity will interfere and grant relief. Griswold v. Hazard, 141 U. S. 260; Leach v. Cowan, 140 S. W. (Tenn.) 1077. While recognizing the rule that equity will not extend relief against a mistake of law, courts are ready and even astute to seize upon any element of fact as sufficient in connection with the mistake of law to justify granting the relief. 16 Cyc. 74; McNaughten v. Partridge, 38 Am. Dec. (Ohio) 731; 16 Cyc. 74. Money paid by one under mistake of his rights and his duties, which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, may be recovered back in an action for money had and received, whether such mistake be one of fact or of law. Northrop's Executors v. Graves, 50 Am. Dec. (Conn.) 264; Culbreath v. Culbreath, 50 Am. Dec. (Ga.) 375. (4) There is a difference in paying private money and paying public money by mistake; public moneys cannot be disbursed or given away contrary to law and disbursement by a public officer, contrary to law, is invalid. Morrow v. Surber, 97 Mo. 161; Campbell v. Clark, 44 Mo. App. 253. The rule is that the payment of public moneys by a public officer, by mistake of law, especially when made to another officer, may be recovered back. 30 Cyc. 1315; Ada County v. Gess, 43 Pac. (Idaho) 71; Heath v. Albrook, 98 N. W. (Iowa) 619; Allegheny v. Grier, 36 Atl. (Pa.) 353; Ellis v. State Auditor, 65 N. W. (Mich.) 577. (5) The obligation to do justice rests upon all persons, natural and artificial. and if a municipality obtains the money, or property of others without authority or by mistake, the law, independent of any

statute, will compel restitution or compensation. Wood v. Kansas City, 162 Mo. 312; 15 Am. & Eng. Ency. Law (1 Ed.), p. 1083; Marsh v. Fulton Co., 10 Wall. (U. S.) 676; Louisiana v. Wood, 102 U. S. 294; Chapman v. Douglas Co., 107 U. S. 348; Morville v. Track Society, 123 Mass. 129; Hathaway v. Cincinnatus, 62 N. Y. 434; Nelson v. Mayor, 63 N. Y. 544; Dillon on Municipal Corp. (3 Ed.), sec. 460; Armstrong Co. v. Clarion County, 5 Am. Rep. (Pa.) 368. "If a municipal corporation received the money or property of another by mistake or without authority of law, it is its duty to restore such money or property to the true owner, or, if used by it, to render an equivalent therefor, from which obligation the law implies a promise so to do." 20 Am. & Eng. Ency. Law (2 Ed.), 1158; Argenti v. San Francisco, 16 Cal. 256; Galloway v. Milledgeville, 48 Ga. 309; Cary v. East Saginaw, 79 Mich. 73; M. E. Church v. Vicksburg, 50 Miss. 601; Wood v. Kansas City, 162 Mo. 303.

FARIS, J.—This is an appeal from the circuit court of Barton county. We get jurisdiction because the case involves a construction of the revenue laws. [State ex rel. v. Adkins, 221 Mo. 112; State ex rel. v. Hawkins, 169 Mo. 615; St. Louis & San Francisco Ry. Co. v. Gracy, 126 Mo. 472; Morrow v. Surber, 97 Mo. 155.]

The learned trial judge with commendable zeal prepared a written statement of the facts, as also his opinion of the law. After examining his findings and conclusions with great care, we have reached the opinion that his views are sound. We therefore adopt his statement of the facts and his opinion as to the law as our opinion herein, adding thereto some supplemental views of our own upon a question of first impression in our courts. This opinion of the trial judge is as follows:

261Mo12

"This is an action by Lamar township, one of the municipal townships of Barton county, against the city of Lamar, a city of the fourth class—the corporate limits thereof being wholly within Lamar township. The petition contains three counts, and seeks to recover certain road and bridge funds levied and collected in Lamar township for the years 1909, 1910 and 1911, and, by the township collector and the county treasurer as *ex-officio* collector, paid to the treasurer of the city of Lamar. The answer admits the corporate existence of plaintiff and defendant, contains a general denial as to other allegations, and specifically denies that any such taxes were ever legally levied; and alleges that the pretended levies are void; and, the further defense that if any such taxes were collected and paid to defendant the same were paid under a mistake of law, and for that reason plaintiff is not entitled to recover. There is not much controversy about the facts.

"The plaintiff, Lamar township, undertook to levy a road and bridge tax of ten cents on the $100 for the year 1909, twenty cents on the $100 for each of the other years, 1910 and 1911. The record of the township board with reference to these levies is brief, and it appeared in evidence that the amounts of the levies for some of the years were not written in until long after the proceedings of the board were had, and some amendments or corrections in the record were made after this suit was brought. It was shown that the clerk of the board sent to the county clerk a certificate of each levy and the taxes were extended on the tax books and collected by the township collector and *ex-officio* collector. That all of such taxes collected within the corporate limits of the city of Lamar were paid to the treasurer of the city of Lamar, and used by the city. At that time the city did not keep a separate street fund, or at least for the first two years, but sums equal to and in excess of the amounts

so paid into the city treasurer were expended on the streets of the city of Lamar. Settlements were made with the township board by the collector and ex-officio collector, and the township board knew, or should have known, of the payments to the city of the portion of the road and bridge tax collected within the corporate limits of the city. The fact is, that all thought, under the law, it was the duty of the collector to pay all road and bridge taxes levied by Lamar township and collected from citizens living within the corporate limits of the city of Lamar to the city treasurer, until after the decision of the Supreme Court in the case of Green City v. Martin, 237 Mo. 474. The taxes so collected and paid to the city treasurer for the use of the city are as follows: 1909, $714.30; 1910, $1455.30; 1911, $1389.81. So if the plaintiff is entitled to recover in this action the judgment should be for these sums and interest from date of demand, August 5, 1912.

"There was a motion filed by the plaintiff's counsel to strike out the defense of void levy, etc., but not having been taken up before the case was called for trial, it was agreed by counsel that the trial might proceed and the questions involved in the motion determined in passing on the case, as the testimony was short and it was more convenient to argue the motion with the case on its merits.

"I. The first question presented by the record is raised by the motion of the plaintiff to strike out the defense of 'void levy.' Can the defendant city hold money collected from the taxpayers by Lamar township because the levy upon which the collection was made is void? The court is of the opinion that the defendant city cannot avail itself of this defense. The taxes were actually extended on the tax books and regularly collected by the collector of the township, and thereby become

Void Levy.

public funds for the purpose for which collected and it does not lie in the mouth of any one but a taxpayer to dispute the validity of the levy. If the defendant city can defend the suit on that ground, the collector could have pocketed all the taxes so collected and defeated a suit for the same or a prosecution for embezzling the funds. The contention carried to its legitimate results would enable the custodians of the funds of these municipalities to embezzle them with impunity, for the records made by persons not learned in the law and with little idea of forms by these municipalities rarely measure up to the full requirements of the law. This defense should have been stricken out on plaintiff's motion.

"II.   Do these taxes levied and collected by Lamar township, from the citizens living within the corporate limits of the city, belong to the plaintiff township or defendant city? That it would seem fair for the city of Lamar to have them, all must admit.
To Whom
Taxes Belong.   It is so recognized by our Legislature, as shown by their repeated efforts to pass and in passing such law. To whom public funds belong and the disposition that can lawfully be made of them, depends upon the law and not upon sentiment or anyone's idea of fairness. So it becomes the court's duty to be governed by the law and not by personal preference of the individual who discharges the judicial function.

"In the year 1908 the people adopted an amendment to the Constitution designated as section 22, article 10. Under section 11 of article 10, the limit of the county tax is fifty cents on the $100, and this includes road tax and township tax, the total limit being fifty cents on the $100. The county levies are generally as much as forty cents on the $100. The record does not disclose the levies in 1909, 1910 and 1911, but the constitutional amendment became necessary

in order to have a sufficient road and bridge fund to keep up the work on the public roads. This section gives the right to the township board to levy a tax of twenty-five cents on the $100 for 'road and bridge' purposes, and it provides that such tax when levied and collected shall be used 'for no other purpose whatever;' the only authority the township board had for levying the twenty cents on the $100 was this section 22 adopted as an amendment to the Constitution. Before the adoption of this section Lamar township could not have levied more than fifteen cents on the $100. [Green City v. Martin, 237 Mo. 474.]

"It is clear under this section of the Constitution (Sec. 22) that of the road and bridge tax therein authorized to be levied and collected by Lamar township, no division could be made with the city of Lamar. It is required to be used for the roads and bridges within the township, and not upon the streets of the city. In the face of this constitutional prohibition no law could be passed by the Legislature taking away from the township one cent of the public funds authorized to be levied under it. This is not only clear from the express words of the Constitution, but it has been so decided by our Supreme Court in the Green City case. It is contended by defendant's counsel that the road and bridge tax levied, collected and sought to be recovered by the plaintiff's suit is not the road and bridge tax contemplated or provided for by this constitutional amendment; that it is the road tax provided for by section 11767 passed by the Legislature in 1909, and it is therein expressly provided that the part collected from citizens within the corporate limits of the cities and towns shall be turned over to the treasurer of such cities and towns. There are two reasons why the court cannot adopt this construction. In the first place, this section of the statute was not in force when the levy was made in April, 1909, and the levy for all the years are sub-

stantially the same.  For the levy of 1909 the court
is forced to accept the constitutional amendment in
1908, for authority to warrant the township board in
making the levy; but a more cogent reason is found
in the fact that under the construction placed on sec-
tion 46 of article 4 of the Constitution no such di-
vision can be made and a statute that authorizes it is
void.  [State ex rel. v. County Court, 142 Mo. 575.]
The statute under consideration in that case was sec-
tion 7903 passed in 1897.  [Laws 1897, p. 218.]  This
act authorizes counties to pay to cities and towns
taxes collected within the corporate limits of such
cities and towns to such cities and towns for improve-
ments of the streets.  The Supreme Court, speaking
through Judge BURGESS, calls attention to the fact that
counties and cities are independent of each other
in their governmental functions; that the duties and
obligations of cities and counties in building and
maintaining roads and streets are very different.
That decision is not based on the fact that it was
sought to divert a part of the public revenue of the
county, and not a part of the road tax of the county.
Had that been the basis of the decision, the court
would not have expressly held the statutes unconsti-
tutional, but would have held that the city of Kirk-
wood sought to obtain funds which could not be set
apart and used for that purpose by the court.  It is
suggested by the counsel for defendant with much
force, that the Supreme Court in the Green City case
had recognized the validity of section 11767, Revised
Statutes 1909, and that case could have been disposed
of without going into the intricate distinction as to
the kind of road tax provided for by the constitutional
amendment and by section 11767.  The fact that the
point is nowhere raised by the brief of the counsel or
referred to by the court, and the further fact that the
distinguished jurist in writing the opinion, declines
to say 'yea' or 'nay' on other questions raised by brief

of counsel, is a cogent reason why that case should
not now be construed as any authority in support of
the validity of section 11767.    The same is true of
the case of State ex rel. v. Everett, 245 Mo. 706.    The
court regards it as a duty to follow what the Supreme
Court does say in its decisions rather than what it
may say by plausible inference.    Section 46 of the
Constitution construed in the Kirkwood case, 142 Mo.,
supra, is reasonably clear and the construction placed
upon section 46 in that case is logical and this court
is of the opinion that the Legislature has no power
to pass a statute authorizing the township to pay the
part of the road taxes collected in the cities and
towns into the treasury of such cities and towns.
The court is satisfied, under the law, the road taxes
collected by the township collector and paid into the
city treasury belong to the township.

"III.    The taxes collected and paid into the city
treasury by the township collector and *ex-officio* col-
lector were so paid because these officers understood
and believed it was their duty, under the law, as was
generally understood by the officers of
both plaintiff and defendant, so that if

Mistake of Law.

the court is right as to its construction of the law,
these payments were made under a mistake of law.
The payments having been so made, can the plaintiff
recover the money by action at law?    The authorities
are not uniform on this question, and in the judgment
of the court it is the most doubtful question involved
in the case.    As between individuals, payments under
a mistake of law cannot be recovered.    The court has
examined the authorities cited in briefs of counsel,
and has reached the conclusion that, in Missouri and
in the best reasoned cases elsewhere, municipalities
constitute an exception to the general rule.    The case
of Morrow v. Surber, 97 Mo. l. c. 161, clearly recog-
nizes the exception to the general rule and is much

in point. The case of Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264, cited by defendant's counsel, supports the contention that payments under mistake of law cannot be recovered back. The facts in this case, without the application of this rule, clearly warrants the decision on the recognized rule that a municipality cannot accept the benefits of a void contract and retain them and recover back the consideration paid. This principle was recognized in the case of Aurora Water Co. v. Aurora, 129 Mo. l. c. 574, in a very able opinion by Judge Sherwood. In other words, municipalities will not be permitted to ignore every principle of common honesty, even though their officers do exceed their authority under the law in dealing with the public. In the Schell City case the officers of the city bought machinery from the defendant and paid part of the purchase price. The contract of purchase was held void, being unauthorized by law. Thereupon the city while retaining the fruits of the contract, brought suit to recover back the money paid on the contract, and the Court of Appeals denied the right to recover back the money paid on the contract and based their opinion on the general rule that money paid under a mistake of law cannot be recovered back. But reading that case in connection with Sparks v. Jasper County, 213 Mo. 237, it will be seen that the case is only treated as authority for the proposition that municipal corporations cannot retain property bought on a valid contract and recover back the consideration paid for it. The language of the court in Ada County v. Gess, 4 Idaho, 611, appeals to this court as a correct statement of the law. That court, among other things, says: Some authorities go so far as to hold that payments of public moneys under mistake of law cannot be recovered back. The doctrine is so repugnant to every principle of justice and common honesty that the latter cases do not, by their reasoning, commend themselves to this court. We cannot

consent to carry the doctrine beyond settlements between individuals.

"A settlement made by an individual and a corporation binds the individual and these cases have caused some misunderstanding as to the law. The court holds that the public money of municipal corporations paid out by its officers under a mistake of law can be recovered back at the suit of such corporation.

"It is contended by defendant's counsel that if the construction our court puts upon the constitutional provisions, and statute passed, using the same language, be correct, then both are void, being in violation of the Federal Constitution requiring equal taxation. That is to say, the taxing of the citizens of Lamar, a separate municipality, for the benefit of Lamar township, would be to require the citizens of Lamar to bear this burden without securing any benefit. The court thinks that counsel overlooks the fact that every citizen of Lamar is a citizen of Lamar township and has the right to participate in the administration of the affairs of the township. The improvement of the public highways are as important to the citizens of Lamar as the citizens living outside of Lamar in the township, but it is not true that the citizens of Lamar township are citizens of Lamar, or have anything to do with or control over, the administration of the affairs of the city. The property-owners who choose to live in a city or town, must bear the burden of taxation for the support of the city government, as well as State, county and township government. This may not seem fair, but it is the law.

"It follows from what has been said that the judgment must be for the plaintiff, on the first count for $714.31, together with interest thereon from August 5, 1912, to this date, at the rate of six per cent per annum, amounting to $46.79, an aggregate of $761.10; on the second count for $1455.30, together with in-

terest thereon from August 5, 1912, to this date, at the rate of six per cent per annum, amounting to $95.32, an aggregate of $1550.62; on the third count for $1389.81, together with interest thereon from August 5, 1912, to this date, at the rate of six per cent per annum, amounting to $91.03, an aggregate of $1480.84; aggregating in all the sum of $3792.56, and it is so ordered.''

As stated by the learned judge *nisi* there is no particular difficulty in reaching the conclusion that the city of Lamar, as against the township of Lamar, is not, and was not, entitled to any of the road and bridge fund collected in Lamar township, pursuant to the levy made therein for the years mentioned. The case of Green City v. Martin, supra, settles this point beyond cavil.

The serious question and the one as to which appellant most earnestly and strenuously contends, is whether the rule that money paid without protest or duress, under a mistake of law, cannot be recovered, applies as between officers of municipal corporations dealing with the money and the property of the public. That individuals may not recover money so paid, absent fraud, protest or duress, is too well settled for argument. [Needles v. Burk, 81 Mo. 569; Savings Institution v. Enslin, 46 Mo. 200; Campbell v. Clark, 44 Mo. App. 249.] Likewise in other jurisdictions this rule so far as it applies to individuals, *sui juris*, dealing with their own property, is well nigh without exception. [30 Cyc. 1313, and cases cited.] The reason for the rule as between individuals (which while sometimes provocative of great miscarriages of justice, and while largely predicated upon expediency) is yet bottomed upon some considerations which are logical and well settled. Among these (but when wrong is being done, clearly not chief among these), is the maxim *ignorantia legis neminem excusat*. Likewise the rule touches nearly upon the doctrines of

accord and satisfaction, and of estoppel; as also upon
the rule forbidding the unsettling of things settled
and thereby disturbing repose by clamorous litigation.
Other maxims, e. g. *volenti non fit injuria,* have like-
wise been invoked; but confessedly even among indi-
viduals, unless the peculiar facts of the case also
warrants the application of the rule *ex aequo et bono,*
there is little logic and less of honesty in putting it
upon such an excuse.  The best that may be said of
the rule even as applied to individuals, is that it is
a handy rule to apply in those rare cases where the
application of it prevents gross injustice.  [See, *argu-
endo,* Schell City v. Rumsey Mfg. Co., 39 Mo. App.
264.]

Certainly in a case like this of dealings between
public officers with the public's money, no excuse for
invoking this rule can be found in logic, nor in our
opinion can such excuse be found in the decided cases.
The rule in such case is thus stated in 30 Cyc. 1315:
"Although there are cases holding the contrary, the
better rule seems to be that payments by a public
officer by mistake of law, *especially when made to
another officer,* may be recovered back." [Ada
County v. Gess, 4 Idaho, 611; Heath v. Albrook, 123
Iowa, 559; Ellis v. State Auditors, 107 Mich. 528;
Allegheny Co. v. Grier, 179 Pa. St. 639; State v. Young,
134 Iowa, 505; McElrath v. United States, 12 Ct. Cl.
201.]

In the case of Ada County v. Gess, supra, in a
very able discussion of this identical question, the
court said:

"As the county is a municipal corporation, it may
sue and be sued, and we know of no limitation as to
time, except that provided in the general limitation
laws of the State.  We are told, however, that money
paid through a mistake of law is a voluntary pay-
ment, and cannot be recovered back; and we are cited
to the case of Badeau v. United States, 130 U. S.

439, as sustaining that doctrine, but it does not do so. Chief Justice FULLER, in that case, did not place his decision on the ground that money paid by one officer of the government to another officer is a voluntary payment that cannot be recovered back, but upon the ground that the claimant, although retired, was still an officer of the army *de facto,* if not *de jure,* and for that reason he was entitled to the money received, and it could not be recovered back, and *ex aequo et bono* should not be returned. Some of the authorities cited, however, seems to sustain the contention of the appellant, and some authorities go so far as to hold that payments of the money of the public by its authorized agent to an officer on account of a mistake of law cannot be recovered back. The doctrine is so repugnant to every principle of justice and common honesty that the latter cases do not, by their reasoning, commend themselves to this court. We cannot consent to carry the doctrine beyond settlements between private individuals.'' [Ada County v. Gess, 4 Idaho, 611.]

In the case of Allegheny Co. v. Grier, supra, the court said:

''So, on the grounds of public policy, the court was right in holding that the maxim '*Volenti non fit injuria*' has no application to the illegal payment of public funds to a public officer—more especially where, as here, it is the peculiar function of that officer to guard the public treasury. Public revenues are but trust funds, and officers but trustees for its administration for the people. It is no answer to a suit brought by a trustee to recover private trust funds that he had been a party to the *devastavit.* There could be no retention by color of right. [Abbott v. Reeves, 49 Pa. St. 494.] With much the stronger reason is this doctrine applicable where the interests of the whole people are involved, and the authorities are accordingly numerous to this effect. [New Orleans v. Finnerty, 27 La. Ann. 681; Allen v. Com.,

83 Va. 94; Com. v. Field, 84 Va. 26; Day Co. v. State, 68 Tex. 526; Steamship Co. v. Young, 89 Pa. St. 191; Taylor v. Board of Health, 31 Pa. St. 73; Smith v. Com., 41 Pa. St. 335, and cases cited.]'' [Allegheny Co. v. Grier, 179 Pa. St. 639.]

Officers are creatures of the law, whose duties are usually fully provided for by statute. In a way they are agents, but they are never general agents, in the sense that they are hampered by neither custom nor law and in the sense that they are absolutely free to follow their own volition. Persons dealing with them do so always with full knowledge of the limitations of their agency and of the laws which, prescribing their duties, hedge them about. They are trustees as to the public money which comes to their hands. The rules which govern this trust are the law pursuant to which the money is paid to them and the law by which they in turn pay it out. Manifestly, none of the reasons which operate to render recovery of money voluntarily paid under a mistake of law by a private person, applies to an officer. The law which fixes his duties is his power of attorney; if he neglect to follow it, his *cestui que trust* ought not to suffer. In fact, public policy requires that all officers be required to perform their duties within the strict limits of their legal authority.

Neither, so far as counsel have invited our attention or we have been able to find, is this view in conflict with anything which has been ruled by us in this State. The case of Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264, applies a different rule. But there were among the facts there held in judgment a peculiar condition of estoppel existing, which fairly distinguishes that case from this. Besides, that was not a case where one officer of a municipality was dealing with another officer of another municipality; there a municipality was dealing with a private business corporation. Concededly, however, the broad rule laid

down largely by *dictum* in that case is not in harmony with the views we are now here holding. In Campbell v. Clark, 44 Mo. App. 249, the rule here urged was approved.

The case of Morrow v. Surber, 97 Mo. 155, is in accord with what we here hold, though the court there went beyond the precise point up for ruling, in order to say that upon the facts there a private individual even would have been entitled to recover. Upon the two points touching the rule as it affects a' public officer, and as it affects a private person, the court said in that case:

"Such a mistake as is here described furnishes ground for recovery of the money in this action. The plaintiff is the custodian of the county funds and sues here in his official capacity. He is agent of the county for the purposes defined by law, and the public is bound to take notice of the limitations of his agency. He cannot give away county funds or disburse them contrary to law. Any such disbursement is entirely invalid. If this case were between private citizens, the undisputed facts would support the judgment given by the circuit court under the settled law of this State. [Columbus Ins. Co. v. Walsh, 18 Mo. 229; Koontz v. Bank, 51 Mo. 275.]"

The other cases of Scott Co. v. Leftwich, 145 Mo. l. c. 34; State ex rel. v. Shipman, 125 Mo. 436; State ex rel. v. Ewing, 116 Mo. 129; and State ex rel. v. Hawkins, 169 Mo. 615, were all cases of settlements made by the county with county officers, i. e., circuit clerks and county collectors. Formal settlements intervened, which settlements were set down upon the solemn records of a court of record. The shadowy reason behind the holdings in these cases smacked of the doctrine of *res adjudicata,* and accord and satisfaction. In fact, this is the chief ground upon which the ruling is made in the latest case cited, to-wit, State ex rel. v. Hawkins, wherein at page 618 it is said:

"It also appears that the defendant Hawkins and the county court, at the March term, 1898, had a full settlement of his accounts of the revenue collected by him in 1897, and with full knowledge of his claim for $216 commissions on back taxes collected by him that year, the court allowed him that credit. There is no charge of fraud or collusion in the case.

"Whether the court erred in allowing that commission on back taxes for that year, the settlement is binding and conclusive in the absence of fraud, collusion or mistake. [State ex rel. v. Ewing, 116 Mo. 129; State ex rel. v. Shipman, 125 Mo. 436.] The item of $216 is no longer in the case." [State ex rel. v. Hawkins, 169 Mo. l. c. 618.]

Moreover, these cases may all be distinguished from the case at bar. Here there was no settlement whatever. The township collector and the county treasurer erroneously believing that under the law it was their duty to pay this money over to the treasurer of the city of Lamar, proceeded to do so. If this township collector had been of the belief that under the statute it was his duty to pay this identical money over to the clerk of this court and had at once done so, would it not be fairly plain that some sort of action would be maintainable to recover the money from our clerk? Such a rule as is contended for by the appellant might and could become a mighty instrument of evil and might (since there is no gauge by which to measure the kind and nature of the mistake of law which will serve to excuse) be used to defend against all manner of thefts and larceny and the illegal frittering away of the public money. While the question presented is a new one and a nice one so far as the precise facts here held in judgment are concerned, we yet think the learned trial court correctly resolved it. It results that the judgment should be affirmed. Let this be done.

*Walker, P. J.,* and *Brown, J.,* concur.