## CHARLESTON.

### PETTY v. UNITED FUEL GAS CO.

Submitted May 11, 1915. Decided May 18, 1915.

1. EVIDENCE—*Parol—Unambiguous Contract.*
    A clear, plain, definite and unambiguous contract cannot be varied by parol evidence of facts and circumstances known to the parties, which might have induced intent different from that expressed, or contemporaneous or subsequent conduct inconsistent with the terms used.  (p. 270).

2. MINES AND MINERALS—*Oil and Gas Lease—Covenant for Penalty—Construction—Failure to Complete Well.*
    A covenant in an oil and gas lease, absolutely binding the lessee to complete a well on the premises within four months, and conditionally to complete three more within successive periods of three months, unavoidable delays after starting to drill excepted, and, upon failure to drill and complete them or any of them, to pay $100.00 "forfeit for each well above specified, which he has not then completed, or surrender the lease for cancellation," conditionally imposes one penalty for the non-drilling of each well, not successive penalties for each failure to be paid every three months.  (p. 270).

3. PAYMENT—*Mistake of Law—Right to Recover Money Paid.*
    Money paid under a mistake of law and with full knowledge of the facts cannot be recovered back.  (p.271).

4. PRINCIPAL AND AGENT—*Voluntary Payment of Agent.*
    Payments made by an agent, acting within the scope of his authority, are binding upon the principal, under the law of voluntary payment.  (p. 271).

Appeal from Circuit Court, Roane County.

Bill by R. R. Petty and others against the United Fuel Gas Company and others. From decree for defendants, plaintiffs appeal.

*Affirmed.*

*Harper & Baker,* for appellants.

*C. C. Douthitt,* and *R. G. Altizer,* for appellees.

POFFENBARGER, JUDGE:

The bill, dismissal of which is complained of, sought specific performance of certain covenants in an oil and gas lease, in

accordance with the interpretation the plaintiffs have put upon them. The dismissal and appeal are results of an opinion on the part of the chancellor as to the meaning of the words in which the covenants are expressed, different from that of plaintiffs and their counsel. Hence the disposition of the appeal turns upon the construction of the clause in question.

The lease, bearing date Aug. 14, 1908, was executed by R. R. Petty, M. A. Petty, his wife, and M. J. Petty to Joseph Hartman Jr., and demises to him, his heirs and assigns, a tract of land containing 530 acres, more or less, for oil and gas purposes, for the period of two years and as long thereafter as either oil or gas shall be produced under it. Hartman assigned the gas right to the United Fuel Gas Co., Dec. 15, 1908, after having completed one unproductive well on the premises. Later, in July, 1910, the United Fuel Gas Co. completed a second well from which gas has since been produced. Under the covenant in question, imposing forfeitures for failure to drill stipulated wells, the plaintiffs have received $1,600.00, all of which except $400.00 the gas company seeks to recover back by way of cross-relief, on the theory of payment under mistake as to matters of fact. In addition thereto, the rental on the producing well has been paid.

The clause of the lease containing the covenants involved reads as follows: ''Second party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portions of the farm and to commence operations for a well within thirty (30) days and complete the same within four (4) months from the date thereof.

It is understood that a second well shall be completed within three (3) months after the completion of the first well and that a third well shall be completed within three (3) months after the completion of the second well and that a fourth well shall be completed within three (3) months after the completion of the third well, unavoidable delays after starting to drill each well excepted, and upon failure on the part of the party of the second part to drill and complete the wells, as above specified, he shall pay one hundred dollars forfeit for each well, above specified, which he has not then completed, or he shall surrender up this lease for cancellation

and thereafter be released from all payments or liabilities hereunder.''

Deeming it ambiguous, the plaintiffs rely upon extraneous evidence in support of their view that it imposes duty to drill two additional wells, or pay $100.00 each three months in lieu thereof, $100.00 for the non-drilling of each of them, or surrender the lease. Prior to the execution of the lease, Petty had declined to give Hartman an ordinary oil and gas lease, conditioned for paymant of $2.00 per acre per year, as delay rental or commutation money for delay in drilling, which would have amounted to more than $1000.00 a year. Under the lease here involved, the lessee, for some years, construed the clause in question as having imposed duty to pay $100.00 for each three months of delay in the drilling of any of the four stipulated wells and paid accordingly. If the clause were ambiguous, these circumstances might be sufficient to sustain the position of the plaintiffs. The potency of practical construction in the interpretation of ambiguous instruments is universally recognized.

But the clear and definite terms of the clause inflict one penalty of $100.00 for each failure to drill any of the wells within the stipulated time and no more. Nowhere in the lease is there a suggestion of delay rental. Desiring development of their property, the lessors declined to execute a lease providing for delay and payment of commutation. They took an absolute covenant for the drilling of one well within four months and a conditional covenant for three additional wells. They made the penalty of failure to drill any one of them an alternative one, payment of $100.00 or surrender of the lease. The terms of this clause fix definite times for the payment of the $100.00 penalties, the expirations of the periods prescribed for the drilling of the wells and import finality on payment thereof. Not a word suggesting obligation to make a second payment on account of any failure can be found in it. Moreover it is impliedly excluded by the positive terms used, requiring only one payment for each default. That different terms would have been more beneficial to the lessors and more equitable under the circumstances disclosed signifies nothing. Nobody can safely say more liberal terms could have been obtained, if they

had been demanded at the date of the execution of the lease. It is useless to cite authority for the proposition that a clear, plain, definite, unambiguous written contract cannot be varied by parol evidence of circumstances which might have induced intent different from that expressed or contemporaneous or subsequent conduct inconsistent with the terms used. There is no similarity between this case and that of *Huggins* v. *Daley*, 99 Fed. 606.

In view of this conclusion, it is unnecessary to say whether equity could require, by way of specific performance, the drilling of additional wells or surrender of the lease. The penalties have been fully paid and there is no suggestion of right to relief on the ground of drainage.

The cross-relief sought by the answer was properly denied, since the fuel company partially held the lease by assignment and must have known its terms. That an agent misinterpreted it and made wrongful payments under it can make no difference. It is not pretended the matter of payment of penalties and rentals was not within his authority, and, within the scope thereof, his acts were the company's acts and his knowledge the company's knowledge. The suggestion that Petty induced the error is not sustained. He did no more than accept the remittances made to him. Having been made with knowledge of all the facts, the payments were purely voluntary and cannot be recovered back.

Being free from error, the decree complained of will be affirmed.

*Affirmed.*