JOHN D. ALDERSON *v.* GAULEY FUEL COMPANY

(No. 8084)

Submitted January 29, 1935. Decided February 19, 1935.

LITZ, PRESIDENT, dissenting in part.

G. D. Herold, A. N. Breckinridge and Paul S. Hudgins, for plaintiff in error.

Dillon, Mahan & White and W. G. Brown, for defendant in error.

KENNA, JUDGE:

John D. Alderson, in his own right and as assignee of Luther Alderson and Albert H. Alderson, brought notice of motion against the Gauley Fuel Company in the circuit court of Nicholas County, seeking to recover certain installments of rental alleged to be due under a coal lease dated July 30, 1918, and speaking as of August 25, 1917, between John D. Alderson and others and Beaver Coal & Timber Company, as modified by a supplementary agreement entered into the 20th day of October, 1925, the present defendant having acquired the interest of the lessee thereunder. The amount claimed in the notice of motion was $3,750.00, being five-sixths of the amount due under the lease as claimed by the plaintiff, one-sixth of the total amount of rental due being outstanding in John B. Laing.

The defendant filed a counter affidavit and a plea denying that it promised in the manner alleged, a plea claiming that under the terms of the lease, it was entitled to a credit of

$2,500.00 against the total rent due, by virtue of the operation of a provision of the lease later to be explained, and its notice of set-off by which it seeks to reduce the plaintiff's demand by the amount of the credit named in its plea. The plaintiff demurred to the defendant's special plea and to its notice of set-off and, both sides expressly waiving a jury, the case was submitted to the court on a stipulation of facts. The court overruled the plaintiff's demurrers to the defendant's special plea and to the notice of set-off and found in favor of the defendant on its plea of set-off, crediting the amount shown to be due the plaintiff to August 25, 1933, and interest, in the sum of $2,500.00 and entering judgment for the plaintiff for $1,347.75. The plaintiff below prosecutes this writ of error.

The lease in controversy began with a basic rental of $500.00 a year payable quarterly. It bore a provision that unless operations were actually begun within a year from August 25, 1917, the rental should increase at the rate of $250.00 a year payable quarterly. This clause was not limited in its operation. Another provision was that for the next succeeding year after operations had been begun the rental was to be $1,000.00 and thereafter $4,000.00 a year, payable as minimum royalty. The supplemental agreement entered into October 20, 1925, provides that the rental prior to the beginning of operations should in no event be more than $3,000.00 a year, thus placing a limitation upon the clause in the lease providing for the annual increase in rentals at the rate of $250.00 a year.

The clause in the original lease upon which this controversy turns is the following:

> "When and at such time as the aggregate total of rents and royalties shall have reached the minimum sum hereafter mentioned, of $25,000.00, the *lesse* or its assigns shall be credited, without interest, by the lessors with any minimum royalty which shall have been paid before the commencement of operations by crediting the lessee or its assigns in each quarter thereafter with one-half the royalty due for said quarter until said minimum theretofore paid before the commencement of mining operations shall be liquidated, but no credit shall be allowed lessee on minimum royalty paid in any year or years after mining operations are commenced."

It appears that after the rentals due as of August 25, 1931, were paid, the lessee had paid more than the aggregate sum of $25,000.00; that thereafter it continued to pay the full rentals due at the rate of $3,000.00 a year until February 25, 1932, without raising any question as to its right to deduct one-half of the quarterly payment under the terms of the lease; and that the quarterly payments of rental were made by voucher or check particularly designating the period that they were intended to cover. The defendant's special plea and notice of set-off takes the position that under the terms of the lease, it is entitled to credit for one-half of all of the rental payments made over and above the sum of $25,000.00 since August 25, 1931, and it seeks to retrieve and to credit against the present claim of the lessors the sum of money that it says it has overpaid since the aggregate of the rentals equaled the sum of $25,000.00 on August 25, 1931. This view was sustained by the trial court, and judgment in favor of the lessors was entered after allowing the lessee credit for one-half of the royalties paid by it since the aggregate of all the royalties paid equaled $25,000.00.

It is urged by the plaintiff in error that the trial court erred in adopting the lessee's construction of the lease because of the fact that the agreement of October 20, 1925, had the effect of cancelling that provision of the lease that entitled the lessee to credit one-half of the quarterly amount due after the total rentals paid in had equaled the sum of $25,000.00 until that sum was refunded to the lessee. We do not think that it is necessary to enter into a detailed discussion of this theory. The agreement of October 20, 1925, has been carefully examined and we are of opinion that its effect was simply to restrict the amount of the annual rental to the sum of $3,000.00. It had no effect upon the provision of the lease for the liquidation of the sum of $25,000.00 rental paid by crediting the lessee with one-half of the quarterly installments of rental, *"when and at such time* as the aggregate total of rents and royalties shall have reached the minimum sum hereinafter mentioned, of $25,000.00."

It is further urged that the true construction of the lease is that two things must concur before the lessee is entitled

to credit of one-half of the quarterly rental in order to liqui-
date the sum of $25,000.00 already paid in, that is to say, first,
that the sum of $25,000.00 must have been actually paid in,
and, second, that operations must have begun. Again, we do
not think that it is necessary to enter into a detailed discus-
sion of this entire lease. It was undoubtedly drawn with the
strong hope that a railroad would be built on Gauley River
to a point opposite the workings to be established on the lease-
hold. However, the refunding provision of the lease would
seem to indicate that the parties thereto had also in mind
the fear that this might not occur, or that, if it did occur, it
would be considerably delayed. From the fact of the agree-
ment of October 20, 1925, limiting the annual rentals to be
paid by the lessee to the sum of $3,000.00, it might further be
inferred that this railroad development was delayed beyond
the expectation of either party to the original agreement, and
that in view of that fact some adjustment of rental was deemed
fair. It seems plain that the purpose of the refunding or liqui-
dating provision of the lease was to ease the burden of the
lessee at a time when the leasehold was yielding nothing and
the rental was a dead expense. This, of course, would be before
operations under the lease began. The parties to the lease ob-
viously hoped that after operations had started the enterprise
would be profitable to them all. We believe that this theory
is consistent with all of the recitals of the lease, with the
refunding or liquidating provisions, when properly construed,
and with the history of the transaction between the parties
as evidenced by the agreement of October 20, 1925. Although
the agreement for the liquidation or refunding of the sum of
$25,000.00 is perhaps not expressed with linguistic precision,
nevertheless, we find nothing in its language that would lead
us to any different conclusion. We, therefore, believe that
the trial court correctly construed the language of the lease.

Another contention of the plaintiff below, plaintiff in error,
is that by making payment of the full quarterly rental after
the aggregate of rentals paid had reached the sum of
$25,000.00, the defendant has placed a practical construction
upon the provisions of the lease favorable to the plaintiff's
contention and cannot now insist upon the contrary version

thereof. The case of *Summit Coal Company* v. *Raleigh Smokeless Fuel Company*, 99 W. Va. 11, 126 S. E. 298, and many other cases, holding that in cases of ambiguity the rule of practical construction will be resorted to, are cited. There is no doubt about the rule. We are of opinion, however, that in the case at bar the contract itself expresses the intention of the parties with reasonable certainty, and in that case the rule sought to be invoked does not apply. *Salisbury* v. *Brooks*, 81 W. Va. 233, 94 S. E. 117.

But it is urged that the rental payments made by the lessee after the aggregate of prior payments had equaled $25,000.00 were made under mistake of law, and that consequently they cannot be recovered back by way of set-off. The general rule of law undoubtedly is that monies paid under mistake of law are voluntarily paid and cannot be recovered, excluding, of course, as the mere statement of the proposition does, all questions of fraud, misrepresentation, and duress. Among the many cases that sustain this proposition are *Ege* v. *T. & R. Koontz*, 3 Penn. 109, and *Lamar Township* v. *City of Lamar*, 261 Mo. 171, 169 S. W. 12, Ann. Cas. 1916D, 740. But the West Virginia case of *Petty* v. *United Fuel Gas Company*, 76 W. Va. 268, 85 S. E. 523, is so closely analogous to the case at bar on this question, that in our opinion it governs this decision. In the case referred to, suit had been brought against the United Fuel Gas Company by R. R. Petty and others to enforce certain stipulations of an oil and gas lease. The lease bore a provision to the general effect that four wells were to be drilled upon the property leased within a specified limited time, or that the lessee should pay $100.00 forfeit for each well not drilled. Sixteen hundred dollars had been paid by the lessee under this covenant, and in the suit, it sought to recover back all but $400.00 of this sum on the theory that the lease required the lessee to pay $100.00 for each well not drilled and did not require the payment of $100.00 each three months that the wells were delayed for each well not drilled. The $1,600.00 had been paid on the delay rental theory of the contract. The court construed the contract to mean that the payment of $100.00 for each well discharged the obligation under the covenant, and that it did not require

the payment of delay rentals at the rate of $100.00 a well every three months. Nevertheless, the court held that the $1,200.00 over-payment had been voluntarily made under mistake of law and could not be recovered back. It seems clear that, on the basis of this precedent, we must hold here that the lessee had no right under its special plea or under its notice of set-off to be credited with money already paid as against the demand of the lessor for current rental payment.

The stipulation of fact shows that on the 25th day of August, 1931, the sum of $25,000.00 had been paid to the lessors by way of rental. Thereafter the lessee paid the full rental up to and including the installment due February 25, 1932, and has paid nothing since that time. Therefore, during the time covered by the pleadings, there have been two full quarterly payments made since the aggregate of rentals paid equaled $25,000.00. The trial court allowed the defendant to take credit for one-half the rental that it had paid to the plaintiff and to his assignors from the 25th day of August, 1931, to the 25th day of August, 1933, thus giving credit for one-half of two quarterly installments of rental that had been paid under mistake of law since the aggregate of $25,000.00 had been paid. To the extent that this judgment credited defendant with one-half of the two rental payments already made, it is erroneous. Credit should have been given simply for one-half of the plaintiff's claim.

Therefore, the judgment of the circuit court of Nicholas County is reversed and the case remanded for further proceedings not at variance herewith.

*Reversed and remanded.*