THE STATE ex rel. COMMONWEALTH TRUST COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, June 25, 1919.

1. **CERTIORARI: Appellate Jurisdiction.** On *certiorari* directing a court of appeals to send up its record in a certain cause for review, it is the duty of the Supreme Court, before considering the case on its merits, to ascertain and determine the question of appellate jurisdiction.

2. ———: ———: **Amount in Dispute: Cross-Appeals.** Where plaintiff alone appeals, the amount claimed in his petition is ordinarily the measure of the appellate court's pecuniary jurisdiction; and where defendant alone appeals, the measure of such jurisdiction is ordinarily the amount recovered below; and where both parties appeal, and the amount in dispute on either side exceeds $7500, both appeals should be determined by the Supreme Court. So that where the amount for which plaintiff sued, together with interest from date of demand to date of judgment, was $7293.33, and the judgment was, upon a general denial, for $917.40, and both sides appealed, the Court of Appeals had jurisdiction.

3. ———: **Conflict in Decisions: Facts of Case.** In a *certiorari* directed to a Court of Appeals on the ground that it has failed to follow the last previous decision of the Supreme Court, what the evidence was in the case decided by the Court of Appeals is to be ascertained from the court's opinion and not from an examination of the record and abstract.

4. **LIMITATIONS: Money Had and Received by Bank: Date of Last Item: Demand.** A deposit in a bank is not due until a demand of

payment is made; hence, the five-year Statute of Limitations does not begin to run in favor of a bank against a depositor before payment is demanded and refused. So in a suit by a depositor against a bank for money deposited in his name, the statute did not begin to run against him on the date of the last item of the account, but only on the date of his demand of payment, and if no such demand was made, then on the date of commencing suit; and a decision of the Court of Appeals so ruling is in accord with Mo. Pac. Ry. Co. v. Continental Natl. Bank, 212 Mo. 505, and there is no contrary ruling by the Supreme Court, either in express terms or by reasonable implication.

5. ——: ——: ——: ——: Interest. And the depositor, if otherwise entitled to recover, is entitled to recover interest on the whole amount due on the date of the last item of the account, from the date of demand of payment, or if there is no such demand, then from the date of commencing his action.

6. CERTIORARI: Conflict in Opinions: Wrong Rulings on Merits. If a Court of Appeals had jurisdiction of a cause, and its opinion does not conflict with any decisions of the Supreme Court, the latter court cannot interfere by *certiorari;* and decisions which might be relevant in a review of the record in the original case by appeal or writ of error, but have no application to a conflict of decisions, will not be considered.

## *Certiorari.*

PRELIMINARY WRIT QUASHED.

*Jeffries & Corum, Moses N. Sale* and *David Goldsmith* for relator.

(1) The opinion of the St. Louis Court of Appeals is in conflict with the decisions of this court in the cases of Hennessy v. Bavarian Brewing Company, 145 Mo. 104; Keele v. Railroad, 258 Mo. 62; Baerveldt Construction Company v. Bagley, 231 Mo. 157. (2) It conflicts with Finlay v. Bryson, 84 Mo. 671; Henderson v. Koenig, 192 Mo. 719. (3) It is based upon a misconception of, and is repugnant to, the rulings of this court in Sidway v. Mo. Company, 187 Mo. 649 and Mo. Pac. Ry. Co. v. Continental Nat. Bank, 212 Mo. 505. (4) It conflicts with the opinion of this court in Johnson v. Smith's Admr., 27 Mo. 591; Shelby County v.

Bragg, 135 Mo. 291; Landis v. Saxton, 105 Mo. 486. (5) It conflicts with the rulings of this court in Rutledge v. Mo. Pac. Ry. Co., 123 Mo. 140; Finnegan v. Railroad, 244 Mo. 662; Chandler v. Railroad, 251 Mo. 602.

*Dawson & Garvin* for respondents.

(1) The decision does not go beyond the constitutional pecuniary jurisdiction of the St. Louis Court of Appeals. Schwyhart v. Barrett, 223 Mo. 502; Baerveldt Construction Co. v. Bagley, 231 Mo. 157; January v. Harrison, 199 S. W. 935; Rourke v. Holmes St. Ry. Co., 257 Mo. 555; Keleher v. Johnson, 272 Mo. 702. The fact that at the date of the decision of the Court of Appeals so much interest had accrued that, added to the amount claimed in the petition, it would exceed $7500, did not oust jurisdiction. The general rule is that when jurisdiction has once attached it will not be ousted by subsequent change in conditions, including amount of claim. Kirby v. Am. Soda Fountain Co., 194 N. S. 141, 146; Cooke v. United States, 2 Wall. 218; State ex rel. Long v. Ellison, 199 S. W. 984. "Where the decision of a Court of Appeals is brought in review by a writ of *certiorari,* on the ground that said court has refused to follow the last previous ruling of the Supreme Court, what the evidence was in the case decided by the Court of Appeals will be ascertained from what the judges thereof say in their written opinion it was, and not from an examination of the record and abstract in that case." State ex rel. United Ry. Co. v. Reynolds, 257 Mo. 19; Shelby County v. Bragg, 135 Mo. 296; Landis v. Saxton, 105 Mo. 491; Mo. Pac. Ry. Co. v. Bank, 212 Mo. 519. (2) These cases respectively apply the Statute of Limitations to their particular facts. They were not upon such questions of law as the Court of Appeals had before it for decision in the case at bar. The Supreme Court has not decided that the relation of depositor and banker could not exist under the facts in the case at bar.

WALKER, J.—*Certiorari* to the St. Louis Court of Appeals, directing it to send up for review the record in the case of Henry R. Strong v. Commonwealth Trust Company. In that case the plaintiff, Strong, had obtained a judgment in the Circuit Court of the City of St. Louis against the Commonwealth Trust Company. There were cross-appeals and the St. Louis Court of Appeals reversed and remanded the case with directions. It is contended by the relator here, that the opinion thus rendered contravenes certain rulings of this court.

The facts, as disclosed by the opinion, are that Strong, the plaintiff in the original suit, was the editor, publisher and owner of a trade journal in the City of St. Louis, entitled the ''National Druggist.'' William S. Ferguson was an employee of Strong's. Ferguson's duties were those of a stenographer and bookkeeper; in addition he did general clerical work, opened the mail, receipted for cash, checks, drafts, subscriptions, and payments for advertising. From day to day he deposited the checks and drafts payable to Strong or the National Druggist. Checks and drafts received by Ferguson were required to be deposited in the Mechanics-American National Bank, with which alone Strong did his banking business. Strong's account in that bank was kept during the period covered by this suit in the name of the National Druggist. To enable Ferguson to make the deposits of the checks and drafts with the bank, Strong provided a rubber stamp which, up to and including 1908, read: ''Pay to the Mechanics-American National Bank for credit of National Druggist,'' and subsequent to that date: ''Pay to the Mechanics-American National Bank for the credit of Henry R. Strong.'' It was Ferguson's duty to deposit checks and drafts received in the course of the business during the time stated, as indicated by these stamps. He was never authorized to draw or sign checks, and he did not as to the funds in the Mechanics-American National Bank. When he received remittances he receipted for them either in the name of the National Druggist, or

that of Henry R. Strong, following either with his initials "W. S. F." (never with his full name), or with the designation of treasurer or otherwise. Strong never indicated the authoritative connection of any one with his business other than himself.

During the time of Ferguson's employment, he was at his own instance listed in the St. Louis Court Directory, after his name, as "Clerk National Druggist; residence, 3527 Henrietta Street." Neither upon the letterheads, papers nor documents of the National Druggist did he appear as an officer or otherwise. He kept in the discharge of his duties while employed by Strong three books: a journal, ledger and cash book. In the journal and ledger he entered the cash, checks and drafts received, and like entries were supposedly, or should have been, entered in the cash book. About April 30, 1913, he did not appear at the office, as theretofore had been his custom, and investigation disclosed that he had absconded and was short in his accounts. It was discovered upon an examination of the books that in many instances the receipt of checks and drafts from patrons of the Druggist had been noted on the ledger, but that no corresponding entries had been made on the cash book. Further investigation disclosed that these checks and drafts had been cashed by Ferguson, as evidenced by the canceled checks sent by the various makers to Strong during the course of the inquiry. It was developed that during the period of Ferguson's employment he was indebted to the account of the National Druggist by reason of such peculations in a sum of about $32,198. In the perpetration of these fraudulent conversions he had opened an account with three banking institutions, among others, the Commonwealth Trust Company, the relator here. The account opened by him with the Trust Company was in the name of the National Druggist. These deposits with the Trust Company commenced on October 17, 1907, and continued from time to time until October 29, 1908, and aggregated $6470.76. They were all made payable to the

order of the National Druggist. In furtherance of these frauds, Ferguson had procured a rubber stamp with which the checks and drafts were indorsed when deposited by him with the Trust Company. It read: "Pay Commonwealth Trust Company, or order, National Druggist, W. S. Ferguson, Treasurer." Ferguson was never treasurer of either the National Druggist or Strong; and was never held out to be by the latter, who had no knowledge, until after Ferguson's disappearance, of these transactions; and had conferred no power, general or special, on him which would have given colorable authority to his acts in this behalf.

The Trust Company made no inquiry as to Ferguson's right to open the account with it, or to sign or indorse checks in the manner stated. During all of this time the office or place of business of the National Druggist was in the Century Building, a few blocks distant from the Trust Company, a fact that could have been ascertained from various public sources. Although the place of business of the National Druggist, as given by Ferguson on the deposit slips drawn by him, was that of his private residence, 3527 Henrietta Street, and was never the address of the National Druggist, or of Strong, as the most cursory examination would have disclosed, the Trust Company made no effort to ascertain the true facts. It simply, without any inquiry, accepted the deposits made to the National Druggist, and paid them out on checks signed by "W. S. Ferguson, Treasurer."

The examination, as stated, disclosed that Ferguson had deposited in the Trust Company funds belonging to the National Druggist, aggregating $6470.76, and had subsequently drawn it all out as treasurer, and had deposited it in his own name. Armed with these facts, Strong made demands in May and August, 1913, of the Trust Company for the payment to him of the amount stated. The latter refused payment. Whereupon, this suit was brought.

The petition is for money had and received, the amount claimed being $6470.76.

The answer admits all of the formal facts heretofore stated in regard to the opening of the account with it by Ferguson, in the name of the National Druggist, the aggregate amount of same, and that it was drawn out by him as treasurer. All other facts are denied.

The Trust Company pleaded further, in defense that the relation of Ferguson to the National Druggist and to Strong as business associate, cashier, bookkeeper, treasurer, and general agent was such as to authorize him to make the deposits and draw them out as disclosed by the facts; that if any loss was occasioned, it was due to the carelessness and negligence of Strong in his grant of unlimited authority to Ferguson and his neglect to examine the condition of the latter's accounts; that Strong was barred by the five-year Statute of Limitations; and that he was further estopped by lapse of time and laches in ascertaining his claim against the Trust Company. It was further alleged that Strong had received from Ferguson a portion of the money on deposit with the Trust Company, and that having obtained and used the money, and failing to offer it to the Trust Company, Strong, by bringing this action, had ratified the act of Ferguson in indorsing the checks. There was no evidence in support of this last averment.

A specific reply in denial was interposed to all of the defensive matters pleaded in the answer.

The trial court instructed the jury, which so found, that all items proved by Strong to have been received by the Trust Company and drawn out by Ferguson prior to August 27, 1908, were barred by the Statute of Limitations at the time of the institution of the action, and. that the verdict should not be for more than $917.40. The Court of Appeals, in reversing this judgment, held that the Trust Company had received the money, credits and effects belonging to the National Druggist for Strong, without his authority, and that they had been withdrawn by an unauthorized party, rendering the Trust Company liable for the amount so unlawfully deposited and withdrawn. That the trial court erred in

giving the instruction to the effect that all items of the account were barred under the five-year Statute of Limitations (Sec. 1889, R. S. 1909), prior to August 27, 1908; that Strong was entitled to recover on the whole account under the evidence with six per cent per annum from the date of demand, if the jury found there was a demand; if not, then from the commencement of this action, if made or brought within five years from the last item of the account, viz., Oct. 29, 1908; that the action was commenced on September 20, 1913; and that the five-year Statute of Limitations did not commence to run until the date of the last entry in the account.

The judgment of the circuit court was therefore reversed by the Court of Appeals and the cause remanded with directions to the trial court to ascertain upon a retrial of that issue alone the full amount which may have been deposited in the name of the National Druggist with the Trust Company by Ferguson from the opening of the account, and of the withdrawal of same by him, with interest thereon from date of demand, if a demand had been shown, or otherwise from the institution of the action.

I. The foregoing embodies a statement of the facts in the original action, as diclosed by the opinion (Strong v. Commonwealth Trust Co., 199 S. W. 1034). Except as to the question of jurisdiction, which it Appellate Jurisdiction. is our duty to ascertain and determine before considering the case on its merits, we are, under the Constitution (Art. 6, Sec. 6, Amendt. 1884), and repeated rulings of this court (State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984; Dubowsky v. Binggeli, 258 Mo. l. c. 200), limited in our review to the determination of whether the opinion of the Court of Appeals is in harmony with previous rulings of this court.

The question of jurisdiction here to be considered is one of amount, and it is therefore purely pecuniary in its nature.

It will be recalled, as a matter of more of historical than decisive interest, that the original jurisdiction of the St. Louis Court of Appeals was limited to $2,500, exclusive of costs. A constitutional amendment in 1884, while extending the territorial jurisdiction of the St. Louis Court of Appeals, established the Kansas City Court of Appeals, and among other powers thereby conferred upon the General Assembly, was that of increasing or diminishing the pecuniary jurisdiction of these courts. In conformity with this power, an act was passed, approved March 20, 1901 (Laws 1901, p. 107), which increased this pecuniary jurisdiction to not exceeding $4500, exclusive of costs. In 1909 (Laws 1909, p. 397) what is now Section 3937, Revised Statutes 1909, was enacted, further increasing the jurisdiction to not exceeding $7500, exclusive of costs. The limit thus fixed has not since been changed.

The amount sued for here, as stated was $6470.76 and interest from the date of demand to the rendition of the judgment, at the rate of six per cent per annum. Where a plaintiff appeals the amount claimed in his petition is, in ordinary cases, the measure of the appellate court's pecuniary jurisdiction; where a defendant appeals, the measure of such jurisdiction is the amount recovered below. [Craton v. Huntzinger, 187 S. W. 48; Ferguson v. Comfort, 264 Mo. 274; Eads v. K. C. Elec. Light Co., 180 S. W. 994; Berry Foundry & Mfg. Co. v. Inter. Moulders Union, 251 Mo. 448.]

Here there were cross-appeals. Where both parties appeal, and the amount in dispute on either appeal is within the jurisdiction of the Supreme Court, both appeals should be sent to, and determined here. [Sandusky v. Sandusky, 265 Mo. 219.] The amount the plaintiff sued for, viz., $6470.76, with interest thereon, as prayed for, at the rate of six per cent per annum from the date of demand, May 15, 1913, to that of the rendition of the judgment, March 25, 1915 (Keleher v. Johnson, 272 Mo. 699; Con. Co. v. Bagley, 231 Mo. 157), aggregates $7293.32, which brought the action, on

appeal, within the jurisdiction of the Court of Appeals. The finding of the trial court in plaintiff's favor was for $917.40. From this judgment the defendant appealed on the ground of non-liability for any amount. Under the rule announced, this finding fixed the appellate jurisdiction in the Court of Appeals. Not only, therefore, is the amount claimed from which plaintiff appeals within the Court of Appeals' jurisdiction, but that as well of the defendant. The appellate jurisdiction of that court is therefore established, so far as the hearing and determination of the case as therein reviewed is concerned. With the appellate jurisdiction, as thus ascertained, we are alone concerned in the determination of the question at issue. What that jurisdiction may be upon a new trial, held in conformity with the mandate of the Court of Appeals as evidence by its opinion herein is not a matter pertinent to this review. [State ex rel. Long v. Ellison, 272 Mo. l. c. 579, 199 S. W. l. c. 986.]

II. The question remaining for determination is as to the harmony of the Court of Appeals' ruling herein with the last previous decisions of this court.

Counsel for defendant Trust Company, the relator here, tried the case below on the theory that if it was liable to the plaintiff, Strong, it was for conversion. The defense interposed was that the five-year Statute of Limitations began to run against the plaintiff as soon as the defendant received the money; that defendant was not negligent in treating Ferguson as plaintiff's agent; and that the latter was authorized to check against plaintiff's account because he, Ferguson, was empowered to deposit checks and drafts to plaintiff's credit; that Ferguson had drawn out all that he had so deposited; had used it in plaintiff's business, and that the latter had gotten the benefit of same, and had recovered money in satisfaction of his claim in a proceeding by attachment against Ferguson. The jury found against the defendant on all issues as to deposits made by Ferguson sub-

Conflicting Decisions.

sequent to August 27, 1908, aggregating $917.40, in accordance with an instruction given by the court that all items prior to said date were barred by the Statute of Limitations at the time plaintiff instituted the suit, and that he could not recover therefor. The Court of Appeals found error only in the giving of the instruction by the trial court, that the Statute of Limitations barred all demands prior to August 27, 1908, and, as stated, reversed the cause with the direction that the trial court, upon a retrial of that issue alone, ascertain the full amount which may have been deposited by Ferguson with the defendant, or in his behalf, from the opening of the account to the withdrawal of same by Ferguson, with interest on same from the date of the demand by plaintiff; or, if that be not shown, from the date of the institution of the suit.

The foregoing repetition is justified only upon the ground of bringing the relevant facts in more immediate connection with the Court of Appeals' rulings thereon. The Court of Appeals found, among other facts, that defendant Trust Company had accepted deposits from Ferguson as the funds of the National Druggist (plaintiff's business name); that Ferguson was at the time acting as agent; that the checks or drafts so deposited were placed to the credit of the National Druggist, the owner thereof, which was Ferguson's principal; that about the same time or frequently thereafter, Ferguson drew out the money theretofore deposited in the name of the National Druggist, and opened an account with the defendant in his own name, and thereafter deposited various amounts in his own name and to his own credit with defendant; that there was no evidence that Ferguson was ever authorized to draw or sign checks against any account of the National Druggist, the plaintiff; that defendant's claim that plaintiff had recovered part of this money from defendant finds no support in the evidence.

That we are governed in our determination of the matter here at issue by the finding as to the evidence by the Court of Appeals, it is only necessary for us to

refer to the case of State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19, in which it is held: ''Where the decision of a court of appeals is brought in review by writ of *certiorari*, on the ground that said court has refused to follow the last previous ruling of the Supreme Court, what the evidence was in the case decided by the Court of Appeals will be ascertained from what the judges thereof say in their written opinion it was, and not from an examination of the record and abstract in that case.''

The relevant facts thus emphasized, there remains for determination the propriety of the Court of Appeals' ruling as to the application of the Statute of Limitations. No clearer, or to my mind, more conclusive presentation of the court's attitude in this regard can be made than that found in its own language, which is as follows:

''When we consider the appeal of plaintiff, however, we are compelled to hold that the learned trial court committed error in giving the instructions to the effect that all the items of the account prior to August 27, 1908, were barred by our five-year Satute of Limitations, Section 1889, Revised Statutes 1909. Plaintiff was entitled to recover on the whole account under the evidence, if the jury believed that evidence, with interest at six per cent per annum from the date of demand, if the jury found that there was a demand; if not, then from the date of the commencement of this action if made or brought within five years from the last item in the account, namely, October 29, 1908. There was evidence that demand had been made of defendant about May 15, 1913, and that a more formal demand was made in August, 1913. This action was commenced on September 20, 1913. The five-year Statute of Limitations, therefore, did not commence to run until the date of the last entry in the account.

''It is true that the relation of a bank to its depositor is not, strictly speaking, that of debtor and creditor. If the latter was the situation, it would have

been the duty of the debtor to have tendered payment. But the bank owes no such duty. It may hold the funds on deposit until demand is made on it. Such is the holding of our Supreme Court, in Missouri Pacific Ry. Co. v. Continental Natl. Bank, 212 Mo. 505, 1. c. 519, Without repeating what is there said we refer to it as conclusive on this point. The text-writers recognize the same rule. Thus, in Magee on Banks and Banking (2 Ed.), sec. 313, p. 592, it is said: 'Unless there is a statute to the contrary, the established law is that the statute does not begin to run against an ordinary deposit until demand.'

"In Vogel v. Kennedy, 127 Mo. App. 228, we said (1. c. 235), that the Statute of Limitations 'does not begin to run on an open, mutual and running account until the date of the last item.' . That is a well-settled proposition. See also, Somerville v. Missouri Glass Co., 144 Mo. App. 463, 1. c. 467, 129 S. W. 474, the opinion of the Springfield Court of Appeals being adopted by us, as see 160 Mo. App. 565.

"In a sense this account was treated by defendant as a mutual, running account between it and the 'National Druggist.' It commenced October 17, 1907, and was carried down to and including October 29, 1908, balanced from time to time, balances carried forward until finally closed out and balanced October 29, 1908, when there appeared a balance of $344.23 in favor of 'National Druggist,' which on that date was transferred to another bank. This made it a mutual account, as see Sidway v. Missouri Land and Live Stock Co., 187 Mo. 649, 1. c. 669."

This conclusion of the Court of Appeals meets with our approval and is in accord, as stated, with the rule announced in the well considered case of Mo. Pac. Ry. Co. v. Cont. Natl. Bank, 212 Mo. 505, to the effect that the Statute of Limitations does not begin to run in favor of a banker against his depositor before demand of payment by and a refusal to pay on the depositor's order. The deposit is not due until the demand is made; hence the necessity of the demand and a refusal

to set the statute running. There is no ruling to the contrary either in express terms or by reasonable implication.

The Court of Appeals' ruling is contended by appellant to be in conflict with Johnson v. Smith's Admr., 27 Mo. 591; Landis v. Saxton, 105 Mo. 486; and Shelby Co. v. Bragg, 135 Mo. 291.

In the Johnson case it was held that the Statute of Limitations would begin to run against one assuming, without authority, to act as guardian of another and receiving money for the latter's use, immediately upon the receipt of same unless the existence of a disability be shown. .

In the Landis case it was held that the statute would run in favor of the secretary of a corporation as to its money withheld by him from the date of the obligation to pay and that demand was not necessary.

In the Shelby County case it was held that the right of action against a county clerk for fees withheld by him in excess of his salary accrued and the statute began to run as soon as the right to declare and enforce the claim existed.

The statement of these rulings will suffice to show their utter irrelevancy to the matter at issue. While it was not necessary so to do, Sherwood, J., in the Landis case distinguishes cases of that class from those in regard to deposits in banks to which he says that the rule he there announces has no application to such cases; that to terminate the bailment and put the bailee in the wrong, if a banker, a demand must be made of him and his refusal to accede thereto shown.

Appellant does not charge that the holding of the Court of Appeals is in conflict with this court's ruling in Sidway v. Land & Live Stock Co., 187 Mo. 649; but that the Court of Appeals has misapplied the ruling in that case. The rule announced in the Sidway case, if it can be thus designated (p. 671), is that it was impossible under plaintiff's own testimony to hold that there was any express or implied contract that the items of the exhibit in evidence should constitute a balance,

or a running account, or be deferred for settlement, within the exception of the statute, Section 4278, Revised Statutes 1899, which defines when an action accrues on a mutual running account. The ruling of the Court of Appeals does not conflict with the doctrine thus announced, but on the contrary clearly distinguishes between cases involving running accounts and others. If error was committed, it consisted in improperly citing the Sidway case as sustaining the court's ruling, although it did not rule in conflict therewith on account of the difference between the facts in the two cases. In the absence of conflict, there exists no room for controversy. While by a process of reasoning and the application of the rule of exclusion, the Sidway case may be held to sustain the doctrine of the application of the statute, as there announced, to the case at bar, it is not necessary to thus indulge in the refinement of logic where it is evident that there is no conflict of opinions. A mistaken application by the Court of Appeals, of the rule announced in a Supreme Court case, will not convict the former court of error, if its conclusion does not engender a conflict. [State ex rel. Wabash Ry. Co. v. Ellison, 204 S. W. 396; State ex rel. Arel v. Farrington, 272 Mo. 157.]

III. Other reasons are assigned, and cases cited by relator in behalf of the relief here sought. In a review of the record in the original case, upon appeal or writ of error, the rulings thus adduced might be shown to have some relevancy. They have none in an application for *certiorari*, where the scope of our inquiry is limited to the Court of Appeals' opinion. As we have repeatedly said, the jurisdiction of these courts having been ascertained, we are powerless to interfere with their judgments unless they contravene some prior holding of this court.

*Wrong Ruling.*

Finding, upon a more careful review, no merit in relator's application, the preliminary writ issued herein is quashed. It is so ordered. All concur, except, *Woodson, J.,* absent.