THE STATE EX REL. CONSOLIDATED SCHOOL DISTRICT NO. 2 OF PIKE COUNTY v. GEORGE F. HAID ET AL., Judges of St. Louis Court of Appeals.—41 S. W. (2d) 806.

Division One, September 5, 1931.

740

*A. J. Murphy, Jr.,* and *May & May* for relator.

*Frank Duvall* and *Hostetter & Haley* for respondents.

HYDE, C.—This is an original proceeding in certiorari. The relator seeks to have the recent opinion of the St. Louis Court of Appeals, in the case of Consolidated School District No. 2 of Pike County v. Lucy M. Cooper, Executrix, et al., quashed, on the ground that it is in conflict with former decisions of this court. The facts of the case are set out in the opinion of the Court of Appeals, as follows:

"This is an action brought by Consolidated School District No. 2 of Pike County, Missouri, against Lucy M. Cooper, executrix of the estate of T. A. Cooper, deceased, and Consolidated School District No. 4 of Pike County, Missouri, to recover the sum of $6,460.28, with interest, which money, in January, 1925, was in the custody of T. A. Cooper, Treasurer of Pike County, to the credit of plaintiff district, and by him, as plaintiff contends, wrongfully paid out to Consolidated District No. 4. . . .

"Plaintiff district was organized in 1914, and defendant district two years later, the two districts being contiguous, and having functioned as consolidated school districts from the time of their organization up to and including the year 1924. Prior to the an-

nual school election of that year, a move was instituted by certain interested parties whereby, under the guise of a change of boundary lines, it was proposed that Consolidated District No. 4 should annex and take over the whole of the territory of Consolidated District No. 2. In due course the proposition was put to a vote, defendant district voting in favor of the change, and plaintiff district against it. The matter was thereupon referred by appeal to the County Superintendent of Schools, who, in accordance with the provisions of Section 11201, Revised Statutes 1919, caused a board of arbitration to be assembled, which, on April 24, 1924, sustained the contention of defendant district, and approved the so-called change in the boundary lines of the two districts.

"Thereupon defendant district, together with certain citizens and taxpayers, sued out a writ of certiorari from the Circuit Court of Pike County, to try out the question of the legality of the change of boundary lines of the two districts in the manner and form attempted. A trial was had, and on July 25, 1924, the circuit court entered its judgment quashing the writ, from which judgment an appeal was perfected to the Supreme Court. . . . The Supreme Court found *sua sponte* that it had no jurisdiction, however, and ordered the case to be transferred here (State ex rel. v. Ingram, 317 Mo. 1141, 298 S. W. 37); and on February 7, 1928, we entered our judgment reversing the judgment of the circuit court. [State ex rel. v. Ingram (Mo. App.), 2 S. W. (2d) 113.]

"After the decision of the board of arbitration, three of the six directors of plaintiff district refused to continue longer as such, and became directors of Consolidated District No. 4. The remaining three directors, who were opposed to the merger, and were desirous that their district should retain its identity, being without a quorum to transact business, petitioned the County Superintendent of Schools to fill the vacancies existing on the board. The County Superintendent thereupon sought advice from the State Superintendent relative to what action should be taken, and the latter advised her that Consolidated School District No. 2 no longer existed, and that she therefore had no authority to appoint any directors upon its board. Upon her consequent refusal, a mandamus suit was brought on July 11, 1924, to compel her to make the appointments, which suit was permitted to await our decision in the appeal from the judgment in the certiorari proceeding. Our mandate reached the circuit court on April 30, 1928, following which the county superintendent promptly made the appointments as the three directors holding over had requested.

"In 1925, T. A. Cooper, the County Treasurer, had in his hands to the credit of plaintiff district the sum of $6,460.28, which had been derived from current and back taxes assessed in 1923 and prior

years against property in plaintiff district. Absent a valid merger, the money concededly ,belonged to Consolidated District No. 2. Both districts were claiming the money, however, and before any payments were made, Cooper sought the advice of a disinterested attorney, as well as of the County Superintendent, both of whom advised him to pay the money over to defendant district, the attorney relying upon his individual investigation as to the legality of the merger, and the County Superintendent upon the advice received from the State Superintendent. After the taking of an indemnifying bond, payments were made to defendant district at the time and in the amounts heretofore stated; and it is to recover such payments that the present action was brought. . . .

"It appears from plaintiff's own case that immediately upon the filing of the report of the board of arbitration, holding that the merger was valid and complete, defendant district took over the whole of the territory of plaintiff district, and in the fall of 1924 opened up the schools in both districts, paying all operating expenses out ·of its own funds on hand until in the following year when the payments in question were made. In fact this course of conduct was followed throughout the four school-years that the merger was supposed to be in effect, the buildings being put in a state of repair, and the children of high school age living in the territory of plaintiff district being permitted to attend the four-year accredited high school maintained by defendant district in its original territory. The two payments in question, as well as all subsequent moneys received, which totaled somewhat less than the sum of $20,464.78 shown by the record to have been extended on the tax books in the years 1925, 1926, and 1927, to the credit of defendant district on personal and real property, located in the territory of plaintiff district, were placed in defendant district's general school fund and paid out for legitimate school purposes, though the exact amount expended cannot be accurately determined. .· . . Defendant district maintained the schools for a longer period than that for which it received taxes, and . . . there is no hint in the record of any unlawful dealings on the part of any one concerned, or any pretense that the schools in the territory of plaintiff district were not maintained in the most efficient manner possible with the funds at the district's disposal.· . . .

"*Plaintiff district had its money on hand purely for school purposes, and it was expended for school purposes.* It was commingled with funds of defendant district so that it is impossible to determine what particular funds were spent for the upkeep of any particular school, but yet *it was legitimately spent, and the pupils in the territory of plaintiff district would seem to have enjoyed better*

*school facilities during the four years of the merger than had been their lot prior thereto."*

The circuit court's judgment was in favor of defendant Cooper and against defendant District No. 4 for $6838.58. 'Both school districts appealed. The Court of Appeals affirmed the judgment in favor of the Cooper estate and reversed it against District No. 4, holding that the demurrers to the evidence, of both defendants, should have been sustained. The Court of Appeals based its decision upon the doctrine of equitable estoppel, holding that because District No. 4 for four school years paid for the operation of the schools of District No. 2, repaired its buildings, and permitted its children to attend high school without paying tuition; that because District No. 2 and its inhabitants accepted these benefits (which were better facilities than formerly enjoyed); that because its taxpayers paid their school taxes to District No. 4, extended on the tax books against their property in District No. 2, for the purpose of providing funds to operate the schools; and because of the other facts mentioned in its opinion, it would be "most inequitable" to allow that district to recover the school funds sued for and leave District No. 4 *"the burden of bearing such expense as was otherwise payable out of such funds."* It is apparent from the above italicized portions of the opinion that the Court of Appeals found as a fact that the funds received by District No. 4, or substantially the amount thereof, were expended for the purposes for which they were raised: to maintain schools in the territory of District No. 2. In reviewing its decision we are bound by its conclusions as to the facts. [State ex rel. Koenen v. Daues, 288 S. W. 14.]

Relator bases its claim of conflict upon no one case of similar facts, but calls our attention to principles upon which the doctrine of equitable estoppel has been said to rest in many former decisions of this court. Its contentions why equitable estoppel should not apply to this case may be summarized as follows:

That public money was illegally disbursed and received and can be recovered back regardless of any subsequent approval or acquiescence;

That there is no equitable estoppel here, because both parties had equal knowledge and equal means of knowledge of the facts; because nothing was done by District No. 2 which misled defendants; and because defendants therefore relied on nothing it did to alter their position;

And that equitable estoppel was not sufficiently pleaded.

To state it still more briefly, relator's position is that the Court of Appeals, in holding such defense applicable in this case, contravenes the principles of equitable estoppel stated in this court's decisions.

As to relator's first contention, it is sufficient to say that the Court of Appeals followed the cases cited, in its support, namely: Lamar Township v. City of Lamar, 261 Mo. 171, 169 S. W. 12, and State ex rel. Barker v. Scott, 270 Mo. 146, 192 S. W. 90. These cases did not involve equitable estoppel and are therefore not in point on that question. They held that payments unlawfully made by a public officer to a public officer can be recovered and that it is no defense that such payments were honestly made and received under a mistake of law. The Court of Appeals correctly held that payment under a mistaken conception of the law was not a defense to this case.

As to the applicability of equitable estoppel to controversies between public bodies, the Court of Appeals properly said:

"As a usual thing, the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to the exercise of governmental functions, but yet exceptions are to be made and where right and justice demand it, the doctrine will be held to apply, particularly where, as is true here, the controversy is between one class of the public as against another class. [Town of Montevallo v. School District, 268 Mo. 217, 186 S. W. 1078.]" (And other cases cited.)

In considering the question of equitable estoppel it must be remembered that former cases "must be looked to and applied by way of analogy rather than rule." [10 R. C. L. 689, sec. 19.]

As is also said there, "while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances."

And as this court said, quoting Dillon on Municipal Corporations (5 Ed.), sec. 94: " 'There is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require.' " [Town of Montevallo v. School District, 268 Mo. l. c. 223.]

The application of the doctrine of equitable estoppel, however, requires some "act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party." [21 C. J. 1119, sec. 122.] But "a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances in the case, has, in good faith, relied thereon." [10 R. C. L. 689, sec. 19.]

748

These are the principles recognized in the decisions of this court cited in relator's brief and in the opinion of the Court of Appeals. [State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S. W. 466; Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 235 S. W. 435; Ib., 315 Mo. 849, 288 S. W. 359; Kellogg v. Moore, 271 Mo. 189, 196 S. W. 15; Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891; Town of Montevallo v. School District, 268 Mo. 217, 186 S. W. 1078; City of St. Joseph v. St. Joseph Term. Railroad Co., 268 Mo. 47, 186 S. W. 1080; City of Mountain View v. Farmers Telephone Exchange Co., 294 Mo. 623, 243 S. W. 153; County of Cole v. Central Missouri Trust Co., 302 Mo. 222, 259 S. W. 774.]

Does the opinion of the Court of Appeals applying equitable estoppel to the facts set out in its opinion violate these principles? Our conclusion is that it does not. The situation disclosed by the facts found by the Court of Appeals was that in the summer of 1924 the merger of the two districts had been upheld by the circuit court. The time to open school was near at hand. Teachers had to be employed, and other school expenses incurred. There was a substantial division in the ranks of District No. 2 on the question of the merger. Undoubtedly the officers, taxpayers and inhabitants of District No. 2, recognizing the situation and desiring that schools be maintained, acquiesced in their operation by the enlarged district. Three of the directors of District No. 2 resigned and became directors of the new district. While those opposed to the merger brought another action against the county superintendent (a mandamus suit to compel her to fill these three vacancies), they did not bring this case to trial, but permitted it to remain dormant in the circuit court, while throughout four years, the board of directors of the enlarged district conducted the schools. No other action was taken to enable District No. 2 to function or to prevent the new district from operating the schools of the whole territory and raising the revenue therefor from taxation of the whole territory. The children of District No. 2 attended the schools the enlarged district was operating, and went to its four-year high school, without paying tuition, an advantage they had not previously had. Taxes were assessed and levied on the basis of estimates of the cost of operation, of all the schools, by the enlarged district. The inescapable conclusion from these facts is that there was acquiescence, at least, in the operation of the schools by the new district as the most feasible means of adequately operating the schools, for the benefit of District No. 2, pending the determination of the suit to test the legality of the merger.

In fact, it seems that the enlarged district was permitted to and did function as a *de facto* district during these four years. [State ex rel. Waddell v. Johnson, 316 Mo. 21, 296 S. W. 806; Black v.

Early, 208 Mo. 281, 106 S. W. 1084; Sayre v. Tompkins, 23 Mo. 443; Gray v. School District (Mo. App.), 28 S. W. (2d) 683.] As the Court of Appeals points out, the funds sued for were not used for the purposes of District No. 4 as previously constituted. They were used for the new district which, though not legally organized, was treated by every one, including the taxpayers, as a school district. There is clearly a difference between officers of a *de facto* district using funds for the purpose and in the territory for which it was raised, and a case like Lamar Township v. Lamar, 261 Mo. 171, where the funds were used for a purpose and in a territory expressly prohibited. At any rate, acceptance of the benefits under these circumstances satisfies the requirement, of estoppel, of action inconsistent with the claim afterwards asserted. District No. 4, in good faith, acted on this position assumed, to allow it, as enlarged, to operate the schools with the money derived from taxation of the territory of District No. 2; it, necessarily, operated the schools for several months before it received any of this money; and, as the Court of Appeals finds, it did so in such a manner that "the pupils in the territory of plaintiff district would seem to have enjoyed better school facilities during the four years of the merger than had been their lot prior thereto." District No. 4, by its action, lost part of the revenue of its high school; used part of the money it received for repairs to school buildings, of which District No. 2 now has the benefit; and used the rest to furnish better schools than previously provided. There is no doubt that it would be a great injury to District No. 4, after having expended the revenue of the enlarged district in good faith for these purposes, to now be required to pay it back, and that, to require it, would permit District No. 2 to have both the money and the benefits of its use. The essential elements of estoppel were therefore present.

Furthermore, we find no case, and relator cites none, in which this court has decided the question of the applicability of equitable estoppel to facts similar to the facts in this case. In certiorari "the scope of our inquiry is limited to the Court of Appeals' opinion" and this court is "powerless to interfere with their judgments unless they contravene some prior ruling." [State ex rel. Trust Company v. Reynolds, 278 Mo. 695, 213 S. W. 804; State ex rel. Continental Life Ins. Co. v. Trimble, 38 S. W. (2d) 1017.]

Equitable estoppel, as relator contends, is an affirmative defense and must be pleaded (Scanlon v. Kansas City, 28 S. W. (2d) 84; Laughlin v. Wells, 314 Mo. 474, 283 S. W. 990), unless such facts appear from the case made by plaintiff. [Grafeman Dairy Co. v. Northwestern Bank, 288 S. W. l. c. 368.] The Court of Appeals finds that the essential facts do appear from the case relator, as plaintiff, made. There is, then,

750

no conflict on that feature of the case. Moreover, from the petition, answer, and reply, which, in accordance with the authority of State ex rel. Hirsch v. Allen, 274 S. W. 353, are set out in full in the abstract, we find that the pleadings set out the facts which fully raised the issues.

The decision of the Court of Appeals in Consolidated School District No. 2 v. Cooper was therefore not in conflict with our decisions, and our writ is ordered quashed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All of the judges concur.