McHugh v. Smiley.

SAME v. SAME.

1. **Practice in Supreme Court on Appeal.** In an action in equity appealed from the district to the supreme court, if the interests of the parties appealing are so united with the others as to require the taking up of the whole record, the entire case will be reviewed.

2. **Deed of Homestead Held to be a Mortgage.** An absolute deed of a homestead the title of which was in the *husband*, was made as security for a debt, an agreement to reconvey upon the payment of the debt being made to the *wife*; *Held*, That the deed was a mortgage.

3. **Homestead:** CONSTRUCTION OF STATUTE. The law in force when the contract is made governs as to the right of homestead. Where, under the homestead law of 1877, a deed of the homestead was executed by both husband and wife, as security for a debt, the fact that the husband, without the consent of the wife, took a lease of the premises from the grantee in the deed, will not affect the homestead right.

4. ———: OCCUPANCY. An agreement to transfer the title of the property from the husband to the wife will not destroy the right of homestead, if the premises continue to be occupied by the debtor and his family as their home. *McMahon v. Spielman*, 15 Neb., 653.

5. ———: ———: SALE WHILE OCCUPIED CONVEYS NO TITLE. A party purchasing part of a homestead in the actual occupation of the family, at a sale under an ordinary execution, will not acquire a title if the property was exempt.

REHEARING of foregoing case.

MAXWELL, J.

After the filing of the opinion in this case a motion for a rehearing was made which was sustained and the cause again argued and submitted to the court.

The action is brought to foreclose a deed absolute on its face, executed on the 22d of October, 1877, by John A. Smiley and wife to the plaintiff, for the W. ½ of the S. E. ¼ of Sec. 3, T. 15, R. 13 E., in Douglas county. The defendants, Morton, Forbes, and Burley, claim to have purchased portions of said premises under judgments against Smiley. The court below found that the deed from Smiley and wife to the plaintiff was a mortgage; but sustained the claims of the other defendants to portions of the land in controversy. On the former hearing this court held that as the court below had found the instrument of conveyance to be a mortgage and not an absolute deed, that therefore there was no sale of the land by Smiley and wife, and it being their homestead, no authority for the defendants named to levy their executions on any portion of the land and sell the same. In other words that the findings of fact would not support the conclusions of law, and as the interests of said purchasers under the execution were separate and distinct from those of the plaintiff they should have appealed from that part of the decree. A careful re-examination of the records satisfies the writer that he was in error in this. The rule as to appeals appears to be this, that when the action is against several defendants who have distinct and separate defenses the judgment as to one defendant in a proper case may be appealed; in which case it will only be necessary to take up so much of the record as pertains to his case. Where, however, the interests of the parties are inseparably connected an appeal will take up the case as to all. *Glass v. Greathouse,* 20 Ohio, 503.

*Hocking Valley Bank v. Walters,* 1 Ohio St., 201. *Emerick v. Armstrong,* Id., 513. We are of the opinion that the interests of the parties in this case are so connected that the appeal by the plaintiff brought up the entire case. If a decree is rendered in favor of a party and he is satisfied with the relief granted, it certainly would be very unreasonable to require him to appeal to save his rights. But the law does not require him to do so, and he may rely upon his decree until it is questioned by the other side in some of the modes provided by law.

2. It appears from the record that Smiley had a prolonged contest to obtain a title to his land, which seems to have terminated in his favor about the year 1872. The taxes were unpaid on the land, and about the year 1875 it was purchased by one Bryant for a portion of the delinquent taxes due thereon. In January, 1877, Bryant obtained a tax deed for said premises.

The exact amount of such delinquent taxes and interest does not appear, but evidently was a very large sum. On the 22d of October, 1877, the plaintiff obtained a quit-claim deed from said Bryant for said premises, the expressed consideration being the sum of $1,940. The plaintiff also paid the taxes on said land from October 22d, 1877, till about the time of the commencement of the suit, amounting to several hundred dollars. There was also a mortgage executed by Smiley and wife on said premises in 1874, to Patrick McHugh, upon which there was due October 22d, 1877, the sum of $1,873. The plaintiff at or about the 22d of October, 1877, paid Patrick McHugh the amount of his mortgage, and to secure the payment of the same, together with the $1,940 to redeem the land from tax sale, and other claims amounting in all to the sum of $4,400.54, took a deed of conveyance of said premises from Smiley and wife, and executed and delivered to Mrs. Smiley an agreement to reconvey to her upon the payment of said amount with interest at any time within eighteen months,

and executed to Mr. Smiley a lease for the premises for one year. The deed and lease seem to have been recorded soon after their execution. The Smileys continued to reside on the premises, and it was their home.

Prior to the conveyance of the land in question by Smiley· and wife to the plaintiff, Morton, Burley, and the Omaha National Bank had recovered judgments against John A. Smiley, which judgments were a lien upon the homestead, and under the statute in force when they became liens would become operative upon the abandonment of the homestead. *Bank v. Carson*, 4 Neb., 501. *Eaton v. Ryan*, 5 Id., 49. But until there was an actual abandonment there was no authority to enforce the judgment liens against the homestead. The execution of the deed from the debtor and his wife for the homestead and their removal from the premises *prima facie* would be sufficient to show such abandonment. But no such result necessarily follows from the execution of a deed for the homestead if the grantors remain in possession. The *purpose* for which the deed was made is open to inquiry, and if to secure a debt a court of equity will declare the deed a mortgage. The homestead law in force when a contract is made governs as to the remedy. *Dorrington v. Myers*, 11 Neb., 391. *De Witt v. Sewing Machine Co.*, *ante* p. 533. This rule, while it gave the judgment creditors a lien on the land, also protected the wife, and under the provisions of the homestead law of 1877 declared a conveyance of the homestead not executed by both husband and wife void. *Bonorden v. Kriz*, 13 Neb., 122. The deed from Smiley and wife to the plaintiff, being intended as a mortgage and not as an absolute conveyance, the husband alone by no act of his could, as against the wife, defeat that object. The lease, therefore, from the plaintiff to Smiley, of which the wife seems to have had no notice at the time of its execution, is, as against her, void.

Objection is made that the title to the land prior to the execution of the deed to the plaintiff was in the husband, and

that the contract of the plaintiff to reconvey when the debt was paid was made with the wife, and cases are cited to show that by such a transfer the title passed out of the husband, and the property became that of the grantee. Under ordinary circumstances there is no doubt this position is correct, but under a homestead law that authorizes either husband or wife or both to claim the homestead it is not material in which the title may be. *McMahon v. Speilman*, 15 Neb., 653. Thus, in the case last cited, McMahon, after certain judgments had been recovered against him, conveyed his homestead to one Griffin, his wife joining in the deed. Griffin and wife immediately reconveyed to the wife of McMahon. There was no change in the possession of the premises and they continued to be occupied as a homestead for the family. The judgment creditors caused executions to be issued and levied on the homestead, upon the ground that the debtor (McMahon) had conveyed the premises; but this court held that as the premises had not ceased to be the family homestead that they were not liable to be sold upon the executions. The same rule applies in this case. The premises in question have never, so far as this record discloses, ceased for an instant to be the family homestead, and therefore were not liable to sale upon execution. The continued residence of Mrs. Smiley and family upon the premises was notice to every one that she possessed some interest there, and a person purchasing is bound at his peril to inquire as to the extent of that interest. *McKinzie v. Perrill*, 15 O. S., 168. *Uhl v. May*, 5 Neb., 157. A party who omits to make proper inquiry of the party in possession as to the extent of his title cannot be protected as an innocent purchaser against such interest. Upon the whole case it is apparent that the judgment heretofore rendered by this court is right and it is adhered to.

JUDGMENT ACCORDINGLY.

THE other judges concur.