ANNA E. ACOM, APPELLEE, v. GEORGE ZIEGLER, APPELLANT.

FILED APRIL 12, 1918.    No. 19975.

1. **Fraudulent Conveyances.** The facts surrounding a conveyance of land between near relatives will be closely examined, where fraud is charged, to discover if the conveyance was made fraudulently or for the purpose of hindering, delaying or defrauding creditors.

2. ———: PROOF. The fraudulent character of such conveyance may be proved by testimony that is in its nature circumstantial.

3. ———: CONSTRUCTIVE NOTICE. Where a grantee knows of his grantor's fraudulent intention, or knows such facts as would put an ordinarily prudent person upon inquiry that would lead to a knowledge of the fraud, such person has constructive notice of the fraud and is bound thereby.

Acom v. Ziegler.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE.  *Reversed.*

*Sutton, McKenzie, Cox & Harris,* for appellant.

*Cain & Mapes, contra.*

DEAN, J.

This is an injunction suit begun by 'Anna E. Acom, plaintiff and appellee, against George Ziegler, William G. Condit, sheriff of Dodge county, and William A. Johnson, deputy sheriff, defendants and appellants, to enjoin them from advertising and offering for sale an 80-acre tract of farm land in Dodge county under an execution issued on a judgment obtained by George Ziegler against James D. Raitt, Gilbert A. Palmer, and Fred R. Acom, husband of plaintiff, on June 3, 1916, in the district court for Douglas county in the principal sum of $12,566.80 and costs of suit taxed at $149.10.  The court found that plaintiff, "ever since the 29th day of March, 1916, has been the absolute owner in fee" of the land involved in this action.  The sheriff and his deputy and their successors were perpetually enjoined from advertising or selling the land for the satisfaction of the judgment sued on.  There was no finding nor judgment as to whether the land was or was not a homestead.  The decree is silent on that point. From the judgment so rendered in favor of plaintiff, defendant Ziegler appealed.

Plaintiff in her brief contends: "The plaintiff claims ownership of the said property by virtue of conveyances in writing executed before the rendition of the judgment, and founded upon a written antenuptial agreement and her marriage in pursuance thereof as the consideration therefor."  The reference to personal property in the record is merely incidental.  It is not involved in this action.

Plaintiff was married to Acom on March 18, 1916. He was a bachelor of 46 years and she was 47 years of age and had been a widow about 2 years.  A daughter

15 years of age, the child of her former husband, lived with her. Acom then owned the land in controversy and about $2,000 worth of personal property that plaintiff now maintains she owns. He was acquainted with plaintiff from childhood. Before her marriage to Acom, plaintiff and her daughter made their home with Ed Ives, a brother at North Bend, for whom she had been keeping house for a little more than 2 years. Ed was married on September 8, 1915, and plaintiff testified that his marriage necessitated the procuring by her of another home for herself and daughter. When she married Acom it appears that she had very little if any property.

Plaintiff's petition charges that the Douglas county judgment obtained by Ziegler against Raitt, Palmer and her husband was "for damages on account of an alleged fraudulent transaction." The transaction to which she refers in her petition was had between the parties in the early part of July, 1914, or about that time. She testified that she never heard of Ziegler, nor of the facts connected with the Douglas county suit for fraud, nor the judgment, until Ziegler undertook to have the 80-acre tract levied on. She says she married Acom mainly to get a home for herself and daughter. She also testified that she married him in consideration of a voluntary promise made by him to her that was afterwards executed by him, without request or demand by her, to convey to plaintiff all of the property that he owned, namely, the 80-acre tract and all of his personal property, worth about $2,000. It appears from plaintiff's testimony and from Acom's that he did not reserve so much as a dollar's worth of his property for himself. All was gratuitously and voluntarily bestowed by him upon plaintiff that he might gain her hand in wedlock. And this too in the absence of demand or even request by her that he give to her any property. In support of her contention she produced the following two letters:

"North Bend, Nebraska, Aug. 20, 1915.
"Mrs. Anna Hasting
    Bolder Col
"Dear Anna  Your most welcome letter received this
morning I have some news for you your Brother Edd
is going to be married some time in September I do
not know the date yet, he told me he was going to
give his Bride a deed to the house in town for a
wedding present.  Now I have not got a house in town
but I will give you a deed to the 80 acre east of town
for a wedding present. The place is rented for this
year but we will get poseen the first of March but we
will talk that over when you get home you let me
know what train you will be on and I will meet you in
fremont I can drive down any time You did not say
how the Bolder friend were geting along I will close
hoping to see you in a few days
                    "With Love Res.
                        "Fred R. Acom."
            "North Bend, Nebraska Sep 6 1915
"Dear Anna  I would like to know for certain how I
stand with you I wrote you a Bolder that I would
give you the 80 acres east of North Bend if you would
marry me now I will transfer all my Personal Property
So you see that all I can do.  Pleas be reddy to give
me a final Answer on the day of the Wedding a David
City We have to start about 8 o'clock in the morning Its
about 40 miles to David City
                        "With Love
                        "Fred R. Acom"
    These letters considered together constitute "the
written antenuptial agreement" for the transfer of
the land in suit from Acom to plaintiff, to which re-
peated reference is made in her brief as "being amply
sufficient to comply with all the requirements of the
statute of frauds."  She said that she received both
letters in due course of mail within a day or two after
their respective dates, the first one at Boulder while
visiting there and the second at North Bend while she

was yet living at her brother's home and at a time when Acom lived in the same village and only two blocks away. No envelopes were produced. She said she carried the letters "in the front of her dress" until the envelopes were almost worn out and then destroyed them.

Plaintiff testified that her husband and her brother Ed were good friends. Acom testified that he called on her frequently at Ed's home as a suitor. Living as he did in the same village and only two blocks away, we will not assume without proof that Acom's courtship would be any different from that which ordinarily prevails elsewhere under like circumstances. Without more extended discussion, it appears to us that both letters were fraudulently conceived and antedated by plaintiff's husband in an attempt to bolster up a fraudulent transfer of his property. Apparently they were not written for an honest purpose, and in view of the record we decline to hold that plaintiff was an innocent recipient of either letter. Even if plaintiff in good faith contemplated marrying Acom in consideration of the conveyance by him of his property to her, she was not therefore relieved from making such inquiry as a reasonably prudent person would be required to make in an ordinary business transaction. Sufficient appears in the record to have caused inquiry by plaintiff respecting the *bona fides* of the transaction on the part of Acom, even though she did not have actual knowledge of the fraud. Following are some of the circumstances that indicate the conveyance was fraudulently contrived by plaintiff and her husband:

Acom testified that he had a diamond ring mounted for plaintiff as long ago as July, 1915, and that on September 8, 1915, he presented it to her as a wedding ring. On this point plaintiff testified: "Well, he gave me a ring and I would not wear it only as a friendship ring at first, and that day (September 8, 1915) I wore it as a wedding ring." Neither witness seems to corroborate the other on this point, and the "friend-

Acom v. Ziegler.

ship ring at first'' feature was doubtless an after-thought.

The deed and bill of sale from Acom to plaintiff are both dated March 29, 1916. Acom testified that they were prepared by the same person and on the same day and in the same bank, and that he delivered them to plaintiff on that day. Plaintiff testified that her husband delivered both instruments to her in her daughter's presence a few days after the marriage. Her daughter was not called as a witness. Mrs. Acom said they were taken by her to Fremont to be recorded, but neither plaintiff nor her husband satisfactorily explain why the deed was recorded on May 4, 1916, and the bill of sale on June 5 following, which will be presently noted. A witness testified that he examined the bill of sale the day after it was recorded, and that the signature of Acom was in ink that when first written is blue and afterwards becomes black, and that the signature then had the appearance of having been very recently written. He examined the signature a month later and it was found to be almost perfectly black.

Respecting the fraud action that was commenced in the district court for Douglas county against Raitt, Acom and Palmer on January 8, 1916, the parties stipulated that it was first tried in the Douglas county district court on April 19, 1916, and that the jury failed to agree. The record shows that only 14 days thereafter, namely, on May 4, 1916, the deed to the land in question was recorded. It was also stipulated that on the second trial the verdict of the jury was rendered on June 3, 1916, for $12,556.81 in favor of Ziegler. It is disclosed by the record that only two days thereafter, namely, on June 5, 1916, the bill of sale was recorded.

On May 15, 1916, plaintiff and her husband executed and acknowledged a mortgage on the land in suit for $12,000 due in five years. This mortgage was recorded the next day. In this mortgage the notary public who prepared, acknowledged and witnessed the deed from

Acom to plaintiff was named as grantee. It does not . clearly appear from plaintiff's testimony that she signed a promissory note in connection with the mortgage, and she testified that she received no consideration for its execution, but that she did so merely because Acom wanted the money. The grantee was not called as a witness. Mr. Acom did not testify repecting the $12,000 mortgage. No witness except plaintiff testified respecting this important financial transaction that involved perhaps more than the value of the land. All of the instruments that purport to affect the title to the land appear for some reason to have been antedated. It is not without significance that, with the exception of the deputy sheriff who testified merely as to the levy that he made, plaintiff and her husband were the only witnesses who testified on the part of plaintiff. Plaintiff's husband carried on the farming operations and all the business connected with the land in all respects after the purported transfer, and apparently retained possession of all of the property the same as before. The personal property referred to by plaintiff was assessed in the name of her husband for the year 1916.

In a supplemental memorandum brief defendant argues and cites authorities to the effect that an antenuptial agreement of which no note in writing is made until after the marriage, while good between the parties, is not binding on creditors or innocent purchasers intervening. 12 R. C. L. 522, sec. 50; *Flory v. Houck*, 186 Pa. St. 263; 20 Cyc. 507. We do not find it necessary to decide that point in view of the present state of the record.

The facts surrounding a conveyance of land between near relatives will be closely examined, where fraud is charged, to discover if the conveyance was made fraudulently or for the purpose of hindering, delaying or defrauding creditors. The fraudulent character of such conveyance may be proved by testimony that is in its nature circumstantial. Where a grantee knows

Acom v. Ziegler.

of his grantor's fraudulent intention, or knows such facts as would put an ordinarily prudent person upon inquiry that would lead to a knowledge of the fraud, such person has constructive notice of the fraud and is bound thereby.

We are convinced that Acom transferred his property to plaintiff with knowledge by her at the time of the fraud and of his fraudulent intention in the premises. The alleged fraudulent transaction that she referred to in her petition was perpetrated by Acom and his associates as against appellant Ziegler in July, 1914, as appears by an exhibit in the present case, which was long before plaintiff or her husband even pretend that the property was conveyed to her.

The record abounds with badges of bad faith. 20 Cyc. 439. There appears the studied pose of innocence and the laborious attempt to give an appearance of fairness and of good faith to the transaction that did not in fact exist. The statement that Acom without demand for any property gave up every vestige of his property to induce plaintiff to marry him is so unusual that it taxes our credulity. These facts convince us of the bad faith of the transaction. We do not deem it necessary to extend this opinion by a more elaborate discussion of the facts. The burden of proof was on plaintiff, and she has failed to establish her case. Rev. St. 1913, sec. 2648. The judgment is not supported by the testimony, and it is therefore reversed and the cause remanded.

REVERSED.

LETTON and SEDGWICK, JJ., not sitting.

HAMER, J., dissenting.

I am unable to agree with the views expressed in the majority opinion. The marriage took place March 18, 1916. The judgment was not rendered until the 3d day of June, 1916, two and one-half months afterwards. The mere fact that a case was pending against the prospective husband would confer no lien upon

102 Neb.—27

the land. Besides, there were other defendants in the case. The case might be continued or compromised or settled. The other defendants might pay in case a judgment should be rendered. I see nothing to prevent Mrs. Acom from getting a good title to the land which her husband promised to convey to her, and which he did convey to her, and which became her homestead.

As to the home, the plaintiff, is shown to be the owner, and the prayer seeks an order enjoining the defendants and each of them from proceeding with the advertisement and sale of the land and that such injunction be made perpetual. I think the creditors have failed to make a case against the land. There is no evidence tending to show that the plaintiff participated in any fraud or attempted fraud.

Mrs. Acom testified that she was a widow, and that she married her husband to get a home for herself and for her daughter. The daughter was 14. The mother was therefore approaching middle life. By the fact that her brother had recently married she was ousted of the home with him which she had previously occupied after the death of her husband. It was natural for a woman, always handicapped in the struggle of life by her sex, to marry for a husband and a home if she could get them, and especially if she had a child she was not well able to provide for. Perhaps no man is quite able to understand the anxieties of a woman thus circumstanced. It must be apparent to every person of mature years and observation that marriages with the purpose of getting a home are not uncommon. That a husband comes with the home should be no objection. Her husband had a right to give the little 80-acre homestead to her, and he did so. Because he was in debt did not deny him the privilege to get married, nor did it hinder him from providing his wife with the home that was necessary to both of them in their new condition. It is dangerous to the welfare of society to deny a man and woman the right to get married and to deny them a

home because the man is in debt at the time the marriage takes place.

I do not feel like putting a lever under the homestead right of these people to pry them loose from what I conceive they are justly entitled to, even against the claims of creditors, especially contingent creditors. I think the burden of proof is upon the creditors to show that the transfer of the land made to the wife was fraudulent, that it was made after a judgment rendered, and that she knowingly participated in a fraud with the sole motive of assisting her husband to defeat creditors who were known to have valid claims. She had a right to marry him for a husband and for a home. Husbands and homes go together, and they ought to. She had a chance to get a home and a husband at the same time. She took the chance and got them both. The majority opinion would leave her without a home, although the creditors had no lien on the home at the time she married him, and the claim was contingent and shadowy. It will be a dangerous thing, a very dangerous thing, if the creditors can go behind the marriage certificate and enforce the lien of a judgment which had no existence at the time the ceremony was performed and the certificate issued, nor until after the homestead right attached.

I think it is clearly against public policy to make the lien of this judgment in effect relate back to a time before the judgment was procured and before the plaintiff and her husband were married. If this farm can be taken away from the plaintiff, then the husband is to be considered as performing a fraudulent act as to his creditors because he contemplates marriage, and then becomes a husband and gives his wife a little homestead. To hold for the creditors is to say that a man has no right to get married and to give a homestead to his wife unless he is out of debt, and that if the wife marries him she gets no home that she can keep, although her husband is willing that she may have it and conveys it to her by a good and sufficient

deed before the judgment is obtained, and when there is no certainty that it will be obtained. No illustration can be plainer than this case itself. The husband had incurred a contingent liability, as he was jointly obligated with others. No one could know what the result might be. Suppose we give this majority opinion its natural effect. It would mean that no marriageable woman can take a husband if he furnishes her with a home unless he is solely without obligations of any kind. There must be no liability on any bond in any judicial proceeding, or upon the bond of any officer, or any contingent liability of any kind. If there is, and the woman marries him, she is likely to be thrown out and left without the homestead that the statute contemplates she is entitled to as a matter of right.

If Mrs. Acom and her husband got married and a part of the transaction contemplated was the conveyance of this tract of land to Mrs. Acom, and it was conveyed to her, it is immaterial whether a part of the transaction may have been in some respects irregular or questionable, as the land in any event is not to lose its homestead character. *McMahon v. Speilman,* 15 Neb. 653; *McHugh v. Smiley,* 17 Neb. 626.

That this court will most zealously defend the rights of the owner of the homestead, see *Van Doren v. Wiedeman,* 68 Neb. 243, where this court held that a sheriff's deed, made in pursuance of a sale of a debtor's homestead which, at the time of the levy, was occupied as such by the debtor and his family, will not divest the debtor of his title to the homestead nor invest the purchaser with any title thereto. In that case Mrs. Van Doren asked for the surplus, and the trial court held that she waived her homestead right by reason of the fact that she demanded the surplus. But this court held that Mrs. Van Doren was not bound, although her husband had signed the receipt with her for the surplus. While the homestead had been sold and Mr. and Mrs. Van Doren receipted for the excess of the purchase price above the amount of the execution, yet this court

protected the homestead and held they were not bound by what they had done.

Suppose that Acom, instead of conveying the land to Mrs. Acom, had conveyed it to somebody else for a valid consideration, would anybody contend that the grantee would not have title to the premises? No consideration can be more substantial than the consideration of marriage. Mrs. Acom by this marriage linked her life and her companionship with Acom for the uncertainties of half a lifetime to come. Is that worth nothing?

The deed to Mrs. Acom conveying her the land appears to have been recorded on May 4, 1916, and was delivered to her a few days after the marriage. The action brought in the district court for Douglas county by George Ziegler against James D. Raitt, Fred A. Acom, and Gilbert A. Palmer was commenced on the 8th day of January, 1916. There appears to have been an amended petition filed in that case, and there was a first trial beginning on April 19, 1916. At this trial the jury failed to agree upon a verdict. At the second trial the jury arrived at a verdict on the 3d day of June 1916. It is stipulated by counsel that a judgment was obtained in that case on the 3d day of June, 1916, in favor of Ziegler and against said James D. Raitt, Fred A. Acom and Gilbert A. Palmer. The petition in that case alleges an oral contract in a land transaction and a conspiracy. Plaintiff had trouble to prove it, because the jury did not agree at the first trial. The subjects considered in that case seem to have included alleged mortgages, accreted lands, and titles possibly defective, and a wide field of controversy was covered. The majority opinion refers to the alleged merits of that controversy, which we are of course unable to determine in this case.

The view of the writer is that plaintiff's husband had a right to convey to her the little homestead without any reference to the uncertainties of the Ziegler case, and that Mrs. Acom had a right to receive the

title, and that she should not be deterred from marrying Acom or receiving a deed to the homestead because of any possible uncertain financial condition of her husband. Besides, there is no evidence that she knew of his financial embarrassment in the Ziegler case, or anything about it. And when men go courting they are said to put "the best foot foremost." I think an ancient rhymster put it something like this:

"When people do a-courting go,
They always go with pomp and show,
And aye the foot
They foremost put
Is just the foot most comely."

I can understand that the little home may have been given to Mrs. Acom with a sort of generous, manly gallantry and a splendid munificence of manner, just as if it were but a single rose and the giver was the owner of an unbounded garden. In the view of the writer the majority opinion as to the homestead is only the law because it is declared to be so, but I would not allow the injunction as to the personal property, and in that respect the majority opinion seems to be right. The husband had only the lawful right to provide his wife with a homestead, and the personal property should be subjected to the payment of his debts.

This case is properly a subject for the consideration of the women of the state, and especially those who desire to preside in homes of their own where they do not stand in fear of a writ in the hands of the sheriff to disposess them because of some contingent debt of the husband not adjudicated to be valid until after the marriage is solemnized. As the law always grows and always grows in the direction of civilization and humanity, let us anticipate its immediate further growth as the rights, duties, and privileges of women, increase and approach the rights, duties and privileges of men.