STATE OF NEBRASKA EX REL. FRANK B. HEINTZE, APPELLEE, v. COUNTY OF ADAMS ET AL., APPELLEES, IMPLEADED WITH COUNTY OF DOUGLAS, APPELLANT.
STATE OF NEBRASKA EX REL. FRANK B. HEINTZE, APPELLEE, v. COUNTY OF ADAMS ET AL., APPELLEES, IMPLEADED WITH COUNTY OF SARPY, APPELLANT.
STATE OF NEBRASKA EX REL. FRANK B. HEINTZE, APPELLEE, v. COUNTY OF ADAMS ET AL., APPELLEES, IMPLEADED WITH COUNTY OF BOX BUTTE, APPELLANT.
STATE OF NEBRASKA EX REL. FRANK B. HEINTZE, APPELLEE, v. COUNTY OF ADAMS ET AL., APPELLEES, IMPLEADED WITH COUNTY OF LANCASTER, APPELLANT.
STATE OF NEBRASKA EX REL. FRANK B. HEINTZE, APPELLEE, v. COUNTY OF ADAMS ET AL., APPELLEES, IMPLEADED WITH COUNTY OF STANTON, APPELLANT.

75 N. W. 2d 539

Filed March 9, 1956. Nos. 33947, 33950, 33958, 33965, 33968.

*Eugene F. Fitzgerald, August Ross, Dixon G. Adams, Robert R. Moran, Elmer Scheele, Dale E. Fahrnbruch, Richard S. Harnsberger, Edward F. Carter, Jr.,* and *T. L. Grady,* for appellants.

*John J. Wilson, Woods, Aitken & Aitken,* and *Van Pelt, Marti & O'Gara,* for appellee Heintze.

*Chambers, Holland & Groth* and *Keith J. Kovanda,* for appellees County of Adams et al.

*Swarr, May, Royce, Smith & Story,* for appellees Maryland Casualty Co. et al.

Heard before MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action was brought in the district court for Lancaster County, Nebraska, by the State of Nebraska ex rel. Frank B. Heintze, plaintiff, against the 93 counties of the State of Nebraska as defendants, the purpose of the action being to obtain a declaratory judgment to determine the validity and interpretation of certain statutes relating to what is commonly referred to as the gasoline tax fund, and with reference to the distribution of certain gasoline taxes and equalization fees by the State Treasurer to the various counties. The sum of $2,912,828.56 was deposited with the clerk of the district

court for Lancaster County, which amount constitutes receipts of the gas tax fund held for distribution to be made by the State Treasurer to the 93 counties of the state.

The pleadings, insofar as necessary to disclose the issues presented to the trial court for decision, may be summarized as follows.

The plaintiff's amended petition alleges in substance that the plaintiff is the Treasurer of the State of Nebraska; that the defendants are each a county established in the State of Nebraska according to law; that sections 60-203 and 66-422, R. R. S. 1943, and sections 66-424.01 and 66-604, R. S. Supp., 1953, purport to direct the manner of allocation and distribution of certain funds by the plaintiff to the various counties of the state, the defendants herein; that said funds have been allocated and distributed under the provisions of section 66-422, R. R. S. 1943, prior to October 1953, on the basis of the 1940 federal census and motor vehicle registrations for the previous calendar year, as and when the same became available; that said funds have been allocated and distributed since October 1953 on the basis of the 1950 federal census and motor vehicle registrations for the previous calendar year, as and when the same became available; that a controversy exists as to the validity and interpretation of the statutes heretofore set forth; and that some of the defendants claim to have received less than their lawful distributive share of such funds and the plaintiff claims, if such is the case, that some of the defendants have received distributions in excess of their lawful share of such funds, and that, in all events the total distribution of such funds which may have been received by some of the defendants, in excess of that to which such defendants are lawfully entitled, will equal in amount the total deficiencies in the distribution of such funds which may have been received by other defendants.

The amended petition further alleges that the following matters of interpretation should be determined

and declared: (a) The time at which the United States government census for the year 1950 became effective and operative, within the meaning of the statutes heretofore set forth; (b) The entire non-farm population of the state and the entire non-farm population of each of the respective defendants, as shown by the last United States government census; (c) The entire population outside of cities and incorporated villages of the state and the population outside of cities and incorporated villages of each of the defendants, as shown by the last United States government census; and (d) The total motor vehicle registrations of the state and the total motor vehicle registrations of each of the defendants for the calendar years 1949 to 1953, both inclusive; that in order to resolve the controversy between the parties, it should be determined and declared in what amounts each of the defendants received distributions in excess of, or less than, as the case may be, the amount to which each such defendant was lawfully entitled during the period from January 1, 1950, to date; that the amount of such funds which have been distributed to some defendants, in excess of that to which such defendants are lawfully entitled, should be deducted from future distributions of such funds to such defendants; and that the deficiency of such funds which have been distributed to other defendants, less than that to which such defendants are lawfully entitled, should be added to future distributions of such funds to such defendants.

The amended petition then alleges that Frank B. Heintze is retiring from the office of State Treasurer, and that there is an accumulation of funds involved herein, distribution of which has been withheld pending the final adjudication herein, in the amount of $2,912,828.56 which said sum is herewith deposited with the court, and that the same may there abide and be subject to the final order of this court concerning the distribution thereof. The prayer is for a declaratory

judgment to conform to the issues raised by the amended petition.

The County of Douglas, and certain other counties of the state which would receive a larger proportion of the funds in the hands of the clerk of the district court for Lancaster County if the 1950 federal census were applied than if the 1940 federal census were applied, filed answers, and in some cases cross-petitions, asking, among other things, that the 1950 federal census be applied from and after August 12, 1951. The use of the 1940 federal census for a period of time until the State Treasurer used the 1950 federal census as shown by the decree, would affect the distribution of funds to certain counties.

We believe a summation of the pertinent parts of the cross-petition filed by Douglas County should be set forth for the reason that it raises issues that Douglas County and some other counties deemed pertinent to a decision by the trial court. This cross-petition contained two causes of action, the first, in substance, alleged that Frank B. Heintze, State Treasurer of Nebraska, received money under sections 66-410 and 66-428, R. R. S. 1943; that section 66-422, R. R. S. 1943, provided for the method of allocation and distribution of said funds; that the State Treasurer did not allocate and distribute said funds as provided thereby; that said State Treasurer received funds under section 60-201, R. R. S. 1943, and that said funds were not allocated and distributed by the State Treasurer in the manner provided by law; and that as the result of the neglect and failure of the State Treasurer to properly disburse the funds received by him as the law required, the cross-petitioner sustained a loss of money due it. The prayer was for an accounting to be had of the funds received by the State Treasurer under the sections of the statutes set forth, and that the court find and determine the amount due Douglas County.

The first cause of action also alleged that the Mary-

land Casualty Company was the surety on the bond of the State Treasurer, and prayed for judgment against the defendant Maryland Casualty Company and for such other relief as equity might require.

The second cause of action set forth that the Indemnity Insurance Company of North America, a corporation, was the surety on the State Treasurer's bond; realleged the sections of the statutes set forth in the first cause of action and the improper allocation of the funds made by the State Treasurer which did not conform to the law; and alleged that as a result thereof, the County of Douglas lost a considerable amount of money. The prayer was the same as in the first cause of action and requested judgment to be entered against the Indemnity Insurance Company of North America.

Sixty-three of the counties, appellees, in their answer in the district court alleged that subsequent to the first day of October 1953, these answering defendants have received from said funds sums and amounts less than those provided by law and are entitled to have such deficiency corrected and the amounts thereof added to the amounts received by the said defendants subsequent to the date last mentioned, and that said defendants are entitled to have the fund deposited by the plaintiff in this court in this action so divided that these defendants will receive in full the amounts lawfully due them since the last mentioned date. It was alleged in the motions to dismiss the appeal, as appears later in the opinion, that if it should be determined and adjudged that the 1940 census applied at all times to the distribution of such funds, or if other findings of the district court as to factors lawfully applicable to the distribution of the gas tax funds are modified or reversed, said appellants might be entitled to a lesser amount than that heretofore received and accepted by them; that these moving appellees in their answer in the district court prayed as follows: "2- The Court find and determine that the basis and formula used by plaintiff prior to October 1,

1953 furnishes the correct and lawful method of distributing the fund referred to in plaintiff's amended petition; 3- That the Court order the fund deposited herein divided among the defendants in accordance with the formula and upon the basis used by plaintiff prior to October 1, 1953"; and that if it should be determined and adjudged that said prayers of these moving appellees should be granted, then the appellants have received and accepted benefits of the decree of the district court substantially in excess of the amounts lawfully due them.

The trial court entered its decree finding that certain counties were represented by counsel and appeared in the action upon answers of some of the defendants, and answers and cross-petitions of other defendants; that the defendant counties Cedar, Lincoln, Wayne, Phelps, Colfax, Thurston, Boyd, Dawes, Dakota, Kimball, and Garden, having been served with summons and having failed to plead or otherwise appear were in default, and default was entered against them.

The trial court, in its decree, determined that the words "last United States Government census," as used in setting up the formula for distribution for money deposited with the clerk of the district court for Lancaster County in connection with this action, referred to the current census, which after 1950 would be the 1950 United States government census; further determined that the 1950 United States government census should have been used as of January 1, 1952, for the reason that the 1950 figures were not reasonably available to the State Treasurer until January 1, 1952, when under the law it would be necessary for him to compute the distribution using the motor vehicle figures for the previous year; and that the State Treasurer, in the interpretation and application of the statutes, performed a quasi-judicial function; the court stated in the decree that the investigation and determination of these matters necessarily involved the determination of when, if

at any time, the 1950 census became effective and when the use of the information contained in the 1940 census should be discontinued; that there was also involved in connection with the motor vehicle registration the classes of motor vehicles that should be considered in making the computation and the date when the registration for the previous calendar year should become effective by reason of the fact that the evidence shows that such registration was not available until at least the second month of the following year; and that in addition, there were necessarily involved many subsidiary questions which the State Treasurer needed to determine to make proper distribution of said funds. It was the conclusion of the court that the evidence clearly showed that the State Treasurer was acting in a quasi-judicial capacity, and in the distribution of the said funds, was exercising the judgment and discretion which was vested in him under the law, and his determinations and his actions in distributing such funds were not subject to collateral attack by any of the defendants.

In its preliminary findings during the course of the trial the court determined that the equalization fees, being the funds which were distributed in accordance with Chapter 60, article 2, R. R. S. 1943, should be distributed under the provisions of subdivision (3) of section 66-424.01, R. S. Supp., 1953, as it was in effect when the distributions were made. The court then proceeded to make the findings as follows: With reference to the equalization fees the court held that the distribution method was not changed after 1947 nor at any time during the remainder of the period the statutes remained in effect; that no one sought to alter the distribution while the statutes were in effect and the Legislature was in session during the years 1949, 1951, and 1953, and no change was made by the Legislature in the manner of distribution of the equalization fees; that under the case of Bankers Life Ins. Co. v. Laughlin, 160 Neb. 480, 70 N. W. 2d 474, it is presumed that the Legislature had

knowledge of the interpretation and construction of the statutes pertaining to the equalization fees, and such interpretation constituted an administrative interpretation which should be followed by the courts; that such interpretation and construction of these statutes by the State Treasurer also constituted the exercise of quasi-judicial power and authority and the judgment and discretion vested in him by the statutes was not subject to collateral attack; and that by reason of the quasi-judicial determinations involved in the duties exercised by the State Treasurer with reference to the statutes here involved and distribution to be made as set forth therein, there could be no personal judgment imposed in the action on account of any erroneous distribution of funds by the State Treasurer.

The court further held that the effect of the quasi-judicial character of the acts of the State Treasurer were mutual as to both the treasurer and the various distributees of the funds involved so that there could be no charge on the funds on deposit with the clerk of the court to correct any previous distributions which were erroneously made, and the prayers in the petition or any of the cross-petitions to that effect were denied.

The court further held that the cross-petition of the County of Douglas attempting to join as defendant in this action the Maryland Casualty Company, a corporation, and the Indemnity Insurance Company of North America, a corporation, by reason of said companies having become sureties for the plaintiff, should be dismissed.

The decree specifically set up a table of disbursements of all the funds on deposit with the clerk of the district court for Lancaster County segregating said funds by counties and dividing the payment to each county in accordance with the statutes and the findings of the court.

The trial court in its decree took into consideration Chapter 60, article 2, and Chapter 66, article 4, R. R. S.

1943, and Chapter 66, article 6, R. S. Supp., 1953, and the relevant sections thereunder pertinent to a decision in this appeal.

From the findings and decree so made, and upon the overruling of the motions for new trial, the counties of Douglas, Sarpy, Box Butte, Lancaster, and Stanton have appealed to this court.

Every issue determined by the trial court was challenged in the motions for new trial, and no attempt was made by the appellants to limit the review of this case in this court. The appellants filed a general notice of appeal to this court.

The clerk of the district court for Lancaster County, in compliance with the order of the trial court, issued checks for the amounts payable to each county to the county treasurers thereof for the benefit of the counties. There is no contention made that said checks were not received or deposited.

The plaintiff's motion to dismiss the appeal set forth that the action by the plaintiff was in the nature of an interpleader for a declaratory judgment against all the counties of Nebraska to determine the validity and interpretation of various statutes with reference to the distribution of certain gasoline taxes and equalization fees by the State Treasurer among the various counties; that there was deposited in the district court in connection with this action the sum of $2,912,828.56, covering receipts of the gasoline tax fund held for distribution by the State Treasurer for the months of October, November, and December 1954; that a departure by this court from any finding or conclusion of the district court will necessarily call for a readjustment of the funds distributed; that such readjustments may increase or decrease the fund of any county; that the record demonstrates that if the 1950 census is not substituted for the 1940 census, in the interpretation of the Nebraska statutes, very substantial overpayments will have been made to the appellants by the distribution now made;

that similar overpayments to the appellants may result by reason of any decision that adopts a different construction of classes of motor vehicles comprising the motor vehicle registration of Nebraska, and such overpayments may arise as a result of a decision changing the effective date of the calendar year registration; and that since the entire field of the validity and interpretation of the numerous and complicated statutes pertinent thereto is subject to review and decision herein, the appellants are wholly unable to maintain that they have any certain or absolute rights as to which there is no possibility of adjustment in this appeal.

Sixty-three of the counties, appellees, also filed a motion to dismiss the appeal, alleging that the appellants have accepted all the benefits for them provided in the decree of the district court for Lancaster County, and cashed the checks of the clerk of the district court for the full amount of the decree in their favor; restated the allegations of their answer in the district court heretofore set forth; and then moved that the appeal be dismissed.

With reference to an appeal in an action in equity, this court in McHugh v. Smiley, 17 Neb. 626, 24 N. W. 277, held: "In an action in equity appealed from the district to the supreme court, if the interests of the parties appealing are so united with the others as to require the taking up of the whole record, the entire case will be reviewed."

In equity, it is the general rule that an appeal brings up the whole case, and that the appellate court passes upon the record as to the facts as well as to the law. See 5 C. J. S., Appeal and Error, § 1462, p. 67.

Generally an appeal removes a cause entirely to the appellate court, subjecting the facts as well as the law to a review. See Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469. See, also, Garner v. City of Aurora, 149 Neb. 295, 30 N. W. 2d 917.

In the case at bar every finding and conclusion of the

district court is necessarily subject to review and re-determination in this court if the appeals are to be heard. This includes every question that may adversely affect the interests of the appellants. In other words, the entire case is before this court for review.

Section 23-1201, R. R. S. 1943, relating to the duties of county attorneys, provides in part: "It shall be his duty to prosecute or defend, on behalf of the state and county, all suits, applications or motions, civil or criminal, arising under the laws of the state, in which the state or the county is a party or interested."

Section 7-107, R. R. S. 1943, with reference to powers of attorneys, provides in part: "* * * (3) to receive money claimed by his client, in an action or proceeding, during the pendency thereof or afterwards, unless he has been previously discharged by his client, * * *." See, also, Gordon v. City of Omaha, 77 Neb. 556, 110 N. W. 313.

In the instant case the county attorneys of the respective counties, or counsel employed by some of the counties, represented the counties when the counties were made defendants. Such attorneys would have authority to receipt for the money.

It is well established by the decisions of this court that it is the general rule that one may not voluntarily accept payment of that part of the judgment in his favor and afterwards prosecute an appeal from the part which is against him. See, Harte v. Castetter, 38 Neb. 571, 57 N. W. 381; Weston v. Falk, 66 Neb. 198, 92 N. W. 204; McKee v. Goodrich, 84 Neb. 479, 121 N. W. 577; Thurston v. Travelers Ins. Co., 128 Neb. 141, 258 N. W. 66; Larabee v. Larabee, 128 Neb. 560, 259 N. W. 520; First Trust Co. v. Hammond, 139 Neb. 546, 298 N. W. 144. See, also, Tyler v. Shea, 4 N. D. 377, 61 N. W. 468, 50 Am. S. R. 660; Hamilton County v. Bailey, 12 Neb. 56, 10 N. W. 539; Annotation, 169 A. L. R. 985. The principle has been so generally approved by the highest

courts of the various states of the Union that we abstain from further citation of authority.

The appellants make reference to the exceptions to the rule which may be stated as follows: The rule that a party cannot maintain an appeal or writ of error to reverse a judgment or decree after he has accepted payment of the same in whole or in part has no application, as a rule, where appellant is shown to be so absolutely entitled to the sum collected or accepted that reversal of the judgment or decree will not affect his right to it, as in the case of the collection of an admitted or uncontroverted part of his demand. 4 C. J. S., Appeal and Error, § 216, p. 418.

A well-settled exception to the general rule is stated in Preluzsky v. Pacific Co-operative C. Co., 195 Cal. 290, 232 P. 970, as follows: "It is the general rule that a voluntary satisfaction of a judgment by a party estops him to prosecute an appeal therefrom, but where such satisfaction is involuntary and enforced by process, the mere circumstance that the judgment has been so satisfied does not of itself alone deprive a party aggrieved of his right to appeal therefrom." See cases cited therein.

There is a second exception to the general rule which is recognized, that is, when the appellant is conceded to be entitled to the thing which he has accepted, and where the appeal only relates to an additional claim on his part. See Guho v. City of San Diego, 124 Cal. App. 680, 13 P. 2d 387, and cases cited therein.

The record in the instant case demonstrates that there is no basis in this case for any claim that the distribution made to the appellant counties is conceded to them by the other parties to this action. That being true, there can be no claim that their rights to such funds are absolute and that no possibility of modification or change exists. By the very nature of this case and the numerous questions involved, appellants are in no position to claim an absolute right to the funds recovered by the decree.

We have before this court the question of whether or not appellants come within either one or both of the exceptions to the general rule. It is the appellants' contention that the only issues presented by this appeal are: (a) Whether the district court, in finding that the determination by the State Treasurer of the amount due the respective counties, constitutes a quasi-judicial determination which was not subject to review by the district court; and (b) whether the district court's holding with reference to the distribution of the equalization fee tax was proper.

The appellants argue that no appeal was prosecuted on behalf of any of the counties which contended that the 1940 government census was applicable, consequently, a determination by this court of either of the two questions presented cannot affect the funds which have been paid to the respective parties. In support of this contention, the appellants cite Northwesern Mutual Life Ins. Co. v. Mallory, 93 Neb. 579, 141 N. W. 190, to the effect that where a decree in an equity suit disposes of more than one distinct and separate issue litigated in the court below, and an appeal is prosecuted by one of the parties as to one of such issues only, and no cross-appeal is prosecuted by any of the other parties, the only issue which will be considered in this court is the one presented by the appeal.

We have previously stated and cited authority to the effect that the entire case is before this court for review of the facts and law. This being true, Northwestern Mutual Life Ins. Co. v. Mallory, *supra,* is not here applicable. Any reference made to cross-appeal in the brief of the plaintiff and the brief of the 63 appellee counties indicates only a legal right which the plaintiff or the 63 appellee counties may utilize in the event the appeal is heard before this court.

The appellants contend that the acceptance of any benefit under a decree must be voluntary, and that in the instant case the payment was made to the county treas-

urers, public officers by law required to accept payment of taxes, who do not have the discretion to accept or reject the payment of taxes tendered them.

Reference is made to section 66-423, R. R. S. 1943. This statute, as previously stated, has to do with the gasoline tax fund and allocation to be made by county treasurers when the money of the gasoline tax fund is transferred to the various county treasurers. The word "shall" appears in the matter of allocation of such fund to be made by the county treasurers. The contention is that this statute in effect imposes the duty upon the county treasurers to receive these funds, and leaves the treasurers with no discretion with reference to the acceptance and rejection thereof.

The appellants cite Hawkins v. County of Lake, 302 Ill. 213, 134 N. E. 84. The statute involved therein imposed upon the treasurer the duty of collecting the taxes. He derived no authority from the decree, but as soon as the injunction was dissolved it became his duty to enforce the collection of the taxes in the manner directed by law. The treasurer received the taxes, not in compliance with the decree but in the course of his official duty imposed upon him by law. The taxpayer paid taxes after an injunction against the treasurer was dissolved. This was not done in compliance with any order of the court. It is quite apparent that the case has no applicability here as contended for by the appellants.

In Schaeffer v. Ardery, 238 Ill. 557, 87 N. E. 343, the court held: "Where a decree enjoins the collection of the disputed portion of the complainant's taxes but provides that nothing contained therein shall prevent the collection of the portion not in dispute and admitted to be due, the receipt, by the collector, of such undisputed taxes does not operate as a release of errors such as may be pleaded in bar of his assignment of error that the court erred in enjoining the collection of the disputed taxes." The statute made it the duty of the plaintiff in

error to collect the taxes, and if not paid it would have been his duty to enforce collection. When voluntarily tendered to him he had no discretion but was bound to accept payment. The right to the taxes did not arise out of the decree and was not conferred by it. The receipt of the taxes not in dispute but admitted to be due was not the voluntary acceptance of any right conferred by the decree. That is, there was nothing in the decree specifically provided that would prevent the collecting of the undisputed taxes. The case is of no assistance to the appellants.

There is no merit to the appellants' contention that the acceptance of the funds by the respective county treasurers was involuntary. The statute above referred to relates only to the allocation of funds by the respective county treasurers. It contains no provisions that the county treasurers are required to accept such funds from the State Treasurer. In fact, as will appear later in the opinion, there was no obligation on the part of the county treasurers of the respective counties to receive and deposit the checks made payable to them. In other words, said checks could have been left with the clerk of the district court of Lancaster County until the issues involved in this litigation were determined by this court on appeal.

The appellants contend that the funds involved herein constituted an accumulation of some 3 months in taxes, which funds are by law directed to be used for road and bridge purposes; that the various governmental subdivisions are sorely in need of funds for road improvement; that this fund provided by far the largest portion of funds for this purpose; and that courts have recognized that the acceptance of a benefit under a decree, while under financial pressure was not voluntary, citing Greenspot Desert Inns v. Roy, 63 Cal. App. 2d 54, 146 P. 2d 39. The opinion held that because of war conditions and depression, the rule as to accepting benefits would not be enforced. The exceptions to the

general rule have not been extended to such length in this jurisdiction nor by courts of last resort in the majority of the states in the Union. We conclude that the cited case lends no support to appellants' contention under the law of this jurisdiction.

The appellants contend that by Article VIII, section 4, of the Constitution of the State of Nebraska, the Legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever.

In addition, the appellants refer to section 77-1737, R. R. S. 1943, which provides in part: "Any taxes so discharged, released, remitted or commuted, may be recovered by civil action from members of any such board, council or trustees, and the sureties on their official bonds at the suit of any citizen of the county, township, city or village, as the case may be, and when collected shall be paid into the proper treasury."

It is the contention of the appellants that the above discloses that the payment of the tax is the duty imposed by law, independent of any decree of the court, and further that it is the duty of the public officer charged with the responsibility of collecting the tax to receive the same when tendered to him, and neither the county treasurer, by any act on his part, nor any other official, by any act on his part, can commute or discharge the obligation of the payment of any tax.

The very nature of the instant suit and the interpretation of the statutes involved and the questions raised as to the manner in which the tax shall be proportioned and distributed, clearly indicates the inapplicability of the above to the instant case.

The appellants contend that the appeal presents an issue independent of the matter of the gasoline tax fund,

namely, the equalization fee tax; that the funds as distributed only pertain to the gasoline tax fund; and that any determination with reference to said fund should not operate as a release of any claims under the equalization fee fund, for the reason that the two are separate and distinct.

In this connection the appellants cite 2 Am. Jur., Appeal and Error, § 215, p. 978, as follows: "Another exception to the general rule has also been applied in the case of a decree consisting of two separate, distinct, and unrelated parts, the disposition of either of which can in no wise affect the decision as to the other."

As previously pointed out, every issue involved in this appeal was determined by the trial court, and the appeal brings the whole case to this court for review. No further citation of authority other than what has been said previously is necessary to disclose that the appellants' contention is without merit.

We deem the following applicable to the instant case. In Harte v. Castetter, *supra,* the court said: "The doctrine that a party who accepts the benefit of a decree in his favor waives the right to prosecute an appeal, is not limited in its application to those alone who have accepted the full amount awarded, but applies as well where there has been part acceptance. A party, by voluntarily accepting under a decree a portion of the amount found due him, thereby as fully and completely recognizes the validity of the decree as if he had drawn the full amount allowed him. If appellant desired to prosecute his appeal he should not have accepted any portion of the fund paid into court, which was adjudged to be his. He was not compelled to accept the money, but could have allowed it to remain with the clerk of the district court until his appeal was decided." See, also, McKee v. Goodrich, *supra;* State ex rel. Tunison v. Millsap, 112 Neb. 722, 201 N. W. 151.

It would be manifestly unjust to permit a party who has accepted the fruits of a decree, by taking all the

money the decree gives him, to prosecute his appeal. A party who is dissatisfied with a decree in his favor should have the same reviewed by proper proceedings. He has the option to do that, or to proceed to enforce the decree and receive the benefits therefrom; but he cannot pursue both, since one course is inconsistent with the other. The acceptance of the money found due by a decree must be deemed an abandonment of an appeal previously taken. See, Harte v. Castetter, *supra;* In re Black's Estate, 32 Mont. 51, 79 P. 554; Webster-Glover Lumber & Mfg. Co. v. St. Croix County, 71 Wis. 317, 36 N. W. 864; and other cases too numerous to cite.

While the general rule is not exclusively predicated on the doctrine of estoppel, this court in City of Grand Island v. Willis, 142 Neb. 686, 7 N. W. 2d 457, held that estoppel applies to controversies between public bodies such as between a city and a school district, or the state. See, also, State ex rel. School Dist. v. Haid, 328 Mo. 739, 41 S. W. 2d 806.

In 31 C. J. S., Estoppel, § 141, p. 416, it is said that estoppel may exist where the controversy is between two or more public agencies, and State ex rel. School Dist. v. Haid, *supra,* is cited. See, also, State ex rel. Caldwell v. Lincoln Street Ry. Co., 80 Neb. 333, 114 N. W. 422, 14 L. R. A. N. S. 336, which held that the state, like individuals, may be estopped by its acts or laches. See, also, State ex rel. Cox v. McIlravy, 105 Neb. 651, 181 N. W. 554.

In applying the doctrine of estoppel, it is quite apparent that it may be applied in a controversy between two or more public agencies. Definitely, it may be applied where the state, county, or city or any other government agency is involved. City of Grand Island v. Willis, *supra.*

For the reasons given herein, we conclude that the motions to dismiss this appeal should be and are sustained.

MOTIONS TO DISMISS APPEAL SUSTAINED.